PERRY *et al.*, Respondents, *vs.* PERRYMAN *et al.*, Appellants.

1. Under the 13th section of the act concerning dower (R. C. 1845) a settlement, whether ante-nuptial or post-nuptial, to be a bar to dower, must be expressed on its face to be in discharge of dower.

### *Appeal from St. Louis Land Court.*

*M. Frissell*, for appellants. The deed of April 8, 1835, was a good jointure, and is a bar to the widow's dower, under the last clause of the 12th section of the act concerning dower, (R. C. 1845.) It is in the very words of the statute, unless it is necessary that the words " for the jointure of the wife" should be inserted in the deed. In the absence of these words, or words of similar import, in the deed, it may be alleged in the pleading, and proved at the trial, that the estate was, and was intended as a jointure, and to bar dower, as was done in this case. *Vernon's case*, 4 Rep. 1. *Villars* v. *Beaumont*,.

2 Dyer, 146. Clancy on Rights, 212. The answer which was stricken out averred that Mrs. Perry had elected to take the provision by way of jointure. R. C. 1845, sec. 11. Any act which shows an intention to hold one estate in preference to the other, is an election.

*C. D. Drake,* (with whom *R. M. Field* was associated,) for respondents. Three questions arise. 1. As John Perry died childless, and his widow claims to be entitled to one half of his estate absolutely, is that one half to be regarded as *dower ?* This involves the construction to be given to sections 3, 5 and 6 of the act concerning dower, (R. C. 1845.) It is contended that the provision made by section 3 is not *dower,* but is in the nature of a rule of descent. *Hinnershits* v. *Bernard's Executors,* 13 Penn. State Rep. 518. 2. Supposing the "provision" contained in said third section to be *dower,* what effect is to be given to the deed ? This is to be determined by the act of 1825, concerning dower. Section 5 of that act is, in effect, and almost in words, a re-enactment of a portion of sec. 6 of ch. 10 of the act of 27 Henry VIII., which was the origin of the modern jointure, and has been the subject of repeated adjudications. There can be no doubt that our legislature used the word "jointure," in its established legal sense. *Vance* v. *Vance,* 21 Maine, 364. It is well settled, that no conveyance to or for the benefit of the wife shall operate as a jointure, to bar her dower in the other real estate of her husband, unless the estate limited to the wife be *expressed or averred* to be in satisfaction of her whole dower. And it must be so expressed in the instrument settling it, or it must appear by *necessary* implication from the contents of the instrument. 2 Blackstone, 137. 1 Greenleaf's Cruise, 216. 2 Flintoff on Real Prop. 197. 2 Crabb on Real Prop. § 1220. 1 Stephens' Comm. 256. 1 Roper on Husb. and Wife, 465–6. 1 Hilliard on Real Prop. 187. *Pearson* v. *Pearson,* 1 Brown's Chan. Cases, 259. *Adsit* v. *Adsit,* 2 J. C. R. 448. 4 J. C. R. 9. *Gordon* v. *Stevens,* 2 Hill's Ch. Rep. 46. 3. In the absence of any thing in the terms of the deed, expressing

or implying that it is made by way of jointure, can an intention that it should have that effect be established by parol evidence? Prior to the statute of Frauds and Perjuries (29 Charles II., ch. 3,) it was held in the affirmative in England, in two cases. But after the passage of that act, such evidence was held inadmissible, because it would have the effect of allowing a surrender of the wife's freehold title to dower, *by parol*, when the statute required such surrender to be in writing. 1 Roper on Husband and Wife, 466–7. *Tinney* v. *Tinney*, 3 Atkyns, 8. 1 Bright on Husb. and Wife, 442–3. This view applies with force under our statute, which endows a widow of the third part of her husband's lands, to which she shall not have relinquished her right of dower in the manner prescribed by law; that is, by deed, in which she shall join her husband, and acknowledge that she relinquishes her dower. See also *Swaine* v. *Perrine*, 5 J. C. R. 482, 490.

SCOTT, Judge, delivered the opinion of the court.

This is a suit for the partition of the real estate of John Perry, deceased, begun by the respondents, Eliza M. Perry and others, his widow and a portion of his heirs, against the appellants, John T. Perry and others, heirs, and the representatives of the interest of the heirs of the deceased. John Perry died on the 4th day of September, 1850, without children, leaving the plaintiff, Eliza M. Perry, his widow, who claims, as her dower in the real estate sought to be divided, one undivided half of it, absolutely.

The defendants, by way of answer to the claim of the plaintiff, Eliza M. Perry, for dower in the premises sought to be divided, set up the fact, that on the 8th day of April, 1835, John Perry, during his marriage with the plaintiff, his widow, settled on her, as a jointure, a lot in the city of St. Louis, worth $1736, on which he afterwards expended upwards of $12,000 in lasting improvements; that this settlement, at its date, was a reasonable share of the estate of the said Perry,

both real and personal, after deducting his debts; that from the time the settlement was made, Eliza M. Perry held the lot for her separate use, and enjoyed the rents and profits thereof until the death of her husband, and since his death, has been in possession of the same; and during the year 1850, after the decease of John Perry, she directed the trustees, under the settlement, to convey the lot to her and her heirs, which was accordingly done, whereby it is alleged she elected to hold the said jointure in lieu of dower. The settlement alluded to was effected by a conveyance from J. B. C. Lucas to Jesse G. Lindell, Augustus Kerr and Beverly Allen, and to the survivors and survivor of them and his heirs, in trust for E. M. Perry, with directions to convey the said lot during the life of John Perry to such persons as she should by writing appoint; and in the event of her surviving her husband, then the same was to be held for her use, and to be conveyed to her and her heirs, in such manner as the said E. M. Perry should advise. John Perry paid the consideration money to Lucas, who conveyed to the trustees above named at his request. The deed of settlement on its face did not express to be in discharge of the claim of dower in the estate of John Perry. The court below struck out an answer containing this defence to E. M. Perry's demand for dower, and entered judgment for the plaintiffs, from which the defendants appealed.

1. The only question presented by the pleadings is, whether the settlement made by John Perry, in April, 1835, on the plaintiff, his wife, was a jointure within the meaning of the 13th section of the act concerning dower, approved March 24, 1845. It cannot have escaped the observation of those who have examined the books of reports in reference to the general law of dower and jointure, that much litigation has arisen respecting settlements made on wives, from the difficulty of ascertaining whether they were intended as provisions in lieu of dower. Numerous cases are to be found on this subject. The statute of 27 Henry VIII., ch. 10, sec. 6, which first made jointures a satisfaction at law for the claim of dower, is silent as to the

question whether the provision for the wife thereby authorized should be expressed to be for jointure, or, in other words, it does not require that it should be so expressed. Such being the statute, it was held by the English courts that, where the settlement, on its face, did not express that it was designed as a jointure, yet it might be so averred in pleading. *Vernon's case*, 4 Coke, 1. After the passage of the act of 29 Charles II., in restraint of frauds and perjuries, it became a matter of controversy in the courts, whether the principle above stated, allowing an averment to be made to show that a provision for the wife was intended as a jointure, was not overthrown. On this question, some were of one opinion and some of another. *Tinney* v. *Tinney*, 3 Atk. 8. Contra, Bac. tit. Dower and Jointure, G. 5. Under this state of things, our statute was enacted, which, unlike the act of 27 Henry VIII., required that the provision made for the wife, if designed to exclude her from dower, or to put her to an election, should be *expressed to be in full discharge of all her claim of dower.* We are warranted, then, in the conclusion, that our statute was worded as it is, in order to dry up this source of litigation. It is neither expressed in the deed of settlement, nor is there any thing contained in it, from which any implication arises that the provision thereby created was designed to exclude a claim for dower.

Independent of the consideration arising from the express language of the act concerning dower, authority is not wanted in support of the claim of the plaintiff, under the circumstances of this case, and as dower is favored in law, in a matter of doubt, the decision should be in favor of the widow. The fact that Perry was childless would always be regarded as a circumstance of much weight, in ascertaining the intent with which the provision was made for his wife. *Swaine* v. *Perrine*, 5 J. Chan. Rep. 488.

It has not been made a question whether a post-nuptial provision, like an ante-nuptial one, should be expressed to be in discharge of dower. There seems indeed, no ground on which

this question could be raised, when it is considered that the deed of settlement was made in April, 1835, when the act of 1825, concerning dower, was in force. The words "as aforesaid," in the 6th section of the act of 1825, which corresponds with the 13th section of the act of 1845, make it plain that the jointure contemplated in the one section was the same as that in the other. We do not regard the omission of those words in the subsequent revisions, as designed to effect a change in the law. It is known that the revision of 1835 rejected many words which served to render a statute plain, as being superfluous and unnecessary. As the 12th section of the act of 1845, concerning dower, prescribes the requisites to a jointure, the following section, in using the word "jointure," must be presumed to use it in the sense in which it is contemplated in the preceding section.

The 10th section of the act concerning dower furnishes no rule by analogy which should affect this controversy. That section was introduced, with a view similar to that which dictated the 12th section. Its object was, to prevent all litigation respecting the question whether a devise by the husband to his wife, would be regarded as a satisfaction for dower, which had given rise to many suits. It would be against all principle, to make that section, the object of which was, the prevention of litigation, unsettle another provision, the aim of which was the same. There is nothing in the case of *Logan* v. *Phillips*, 18 Mo. Rep., which affects the question now before the court. There, the settlement was expressed to be in lieu of dower.

The other judges concurring, the judgment of the court below will be affirmed.