Farris *et al.* v. Coleman, *Appellant.*

DIVISION ONE.

1. **Dower:** ANTENUPTIAL CONTRACT : JOINTURE. An antenuptial marriage contract, which does not purport to give the contemplated wife any property except that which she then owned or might thereafter acquire, and which is not expressed to be in discharge of dower, does not constitute such a jointure under the statute ( R. S. 1879, sec. 2201 ) as will bar dower.

2. ———— : ———— : EQUITABLE JOINTURE. Nor will such agreement constitute an equitable jointure, it appearing that the wife owned no property at the date of her marriage.

3. ———— : RELEASE OF CONTRACT. A compromise agreement between the widow and heirs of a decedent respecting his property which undertakes to confirm existing land titles, but makes no new grants, will not operate as a release of the wife's right of dower in land conveyed by the decedent to one of the heirs in which conveyance the wife did not join.

Farris v. Coleman.

4. ——— : PRIOR MORTGAGE : FORECLOSURE SALE AFTER MARRIAGE. A *bona fide* sale under the foreclosure of a mortgage executed prior to the marriage will bar dower, though the sale is made after the marriage.

5. ——— : ADVERSE POSSESSION : LIMITATION. An action for the assignment of dower is an action for the recovery of real estate and is barred by ten years' adverse possession after the cause of action has accrued.

6. ——— : ——— : ——— : WIDOW'S IGNORANCE. Nor does the fact that the widow may have been ignorant of her rights create any exception in her favor as to the running of the statute of limitations.

*Appeal from St. Louis City Circuit Court.*—HON. G. W. LUBKE, Judge.

REVERSED AND REMANDED.

*Hitchcock, Madill & Finkelnburg* for appellant.

, ( 1 ) The trial court erred in refusing a nonsuit asked by defendant. The plaintiff never was entitled to dower in the leasehold. The sheriff's deed to Benoist, under the decree of June 15, 1866, foreclosing a prior mortgage by Page, vested in Benoist the complete legal and equitable title which Page held before his marriage with plaintiff on July 3, 1866, to an undivided one-half interest in said thirteen lots. That deed is regular in form and for full value paid by Benoist as · therein recited. Plaintiff offered no proof impeaching the validity of said deed, decree, prior mortgage or debt secured thereby or tending to show that Benoist took title thereunder subject to any resulting or other trust or agreement for Page's benefit or otherwise than in payment *pro tanto* of the prior mortgage debt ascertained by said decree. Rorer on Judicial Sales, sec. 54 ; *Gross v. Lange,* 70 Mo. 45 ; Washburn on Real Prop. [ 4 Ed.] 502 ; *Modrell v. Riddle,* 82 Mo. 31 ; *Cornelius v. Smith,*

55 Mo. 533 ; *Woodford v. Stephens*, 51 Mo. 443. It is the exclusive province of the court to construe and give their legal effect to all written instruments, and also to apply the law where the facts are undisputed or clear. 1 Thompson on Trials, secs. 1065, 1030 ; *Powell v. Powell*, 23 Mo. App. 365. ( 2 ) Even if plaintiff had ever been entitled to dower in said lots Coleman acquired a complete title thereto by adverse possession before November 19, 1881 ( date of this suit ), barring any claim by her. *Robinson v. Ware*, 94 Mo. 678 ; *Beard v. Hale*, 95 Mo. 16 ; *Fulkerson v. Mitchell*, 82 Mo. 21 ; *Fairbanks v. Long*, 91 Mo. 631 ; *Stocker v. Green*, 94 Mo. 280 ; *Gardner v. Terry*, 99 Mo. 526 ; *Hoffman v. Perry*, 23 Mo. App. 20, 27 ; *Wells v. Halpin*, 59 Mo. 95 ; *Foley v. Jones*, 52 Mo. 67 ; *Rogers v. Brown*, 61 Mo. 192 ; *Moore v. Mining Co.*, 80 Mo. 91 ; *Rogers v. Brown*, 61 Mo. 195–6 ; *Hughes v. Littrell*, 75 Mo. 575 ; *Funkhouser v. Lay*, 78 Mo. 466. ( 3 ) Instruction, numbered 2, given by the court on its own motion in regard to adverse possession, was erroneous, being contrary to the provisions of the statute of limitations as to actions for the recovery of real estate. No proof of any such act or concealment was offered in this case, nor was this instruction in conformity with that sole statutory exception. *Robinson v. Ware*, 94 Mo. 678 ; *Beard v. Hale*, 95 Mo. 19 ; *Rogers v. Brown*, 61 Mo. 192–3, affirmed in *Hughes v. Littrell*, 75 Mo. 575 ; *Funkhouser v. Lay*, 78 Mo. 466. ( 4 ) The court erred in excluding the testimony offered by defendant of the contents of the instrument known as the " Chauvin agreement," dated June 2, 1869, to which plaintiff and defendant were parties, pleaded and set out at large in defendant's answer. *Budd v. Hoffheimer*, 52 Mo. 305 ; *Coughlin v. Haeussler*, 50 Mo. 128. ( 5 ) The court erred in the instructions given to the jury ( below specified ), at plaintiffs' request, as to the purport and effect of the marriage contract of plaintiff with D. D. Page, dated June 28, 1866 ; both as to the rights acquired by

plaintiff and the obligations assumed by D. D. Page thereunder ; and said instructions were inconsistent with other instructions given ( as modified ) by the court, and were, therefore, calculated to mislead the jury.

*Wm. B. Thompson* and *Chas. S. Hayden* for respondents.

(1) There is before this court, on the record, as it now stands no material question of law at all. Though a large number of technical questions are sought to be raised by the appellant, these, one and all, cut no figure now, and if every one of them were decided ( as none of them can be, since there is no merit in any of them ) against the respondents, such decision could not insure a reversal, since on the appellant's own evidence, as put in by him, the plaintiff is entitled to her dower and damages, as found by the jury. (2) The appellant ( defendant below ) himself offered in evidence the deed of this property from D. D. Page to Wm. T. Coleman, of date August 26, 1867, which Coleman, the defendant, received at that date and recorded on March 28, 1884. As the plaintiff, James C., did not join in this deed ( and, as the jury found, knew nothing of it until 1880 or 1881 ), she is unquestionably, and independently of the questions sought to be raised entitled to her dower. R. S. 1879, secs. 2186, 2197, 2206, 2211, *et seq.; Rankin v. Oliphant,* 9 Mo. 239 ; *McClanahan v. Porter,* 10 Mo. 746 ; *Thomas v. Heese,* 34 Mo. 13 ; *Grady v. McCorkle,* 57 Mo. 173. (3) On the facts as substantially admitted by this record, and on plain provisions of the dower statute, in regard to which no controversy has been, or can be, made, the plaintiff is entitled to her dower. The defendant's own pleadings moreover show this ( in connection with facts not controverted in this case ), the amended answer averring, in so many words, that defendant took title from Page, by a deed made in Page's lifetime, " thus that whatever title said Daniel

D. Page had therein or to any part thereof during his life passed to and was vested in said defendant, before the death of said Page." (4) The instruction at close of plaintiffs' case to the effect that plaintiffs could not recover, on their evidence, as offered, was erroneous, and was properly refused by the court. *Gentry v. Woodson*, 10 Mo. 224; *Duke v. Brandt*, 51 Mo. 222; *Wheeler v. Smith*, 50 Mich. 93. (5) The so-called marriage contract was no bar to the plaintiff's dower. R. S. 1879, sec. 2201; *Perry v. Perryman*, 19 Mo. 469; *Johnson v. Johnson's Adm'r*, 23 Mo. 561; *Dudley v. Davenport*, 85 Mo. 462; *Mowser v. Mowser*, 87 Mo. 437; *Bierer's Appeals*, 92 Pa. St. 265; *Curry v. Curry*, 17 N. Y. S. C. (Hun) 366; *Babcock v. Babcock*, 53 Howard (N. Y.) Pr. 97. (6) The Chauvin contract, so called, was no bar. Indeed, it had nothing whatever to do with this case, and the court below properly excluded it from the jury. (7) The law as laid down by the court below in regard to the yearly value of the plaintiff's dower was correct. *Riley v. Clamorgan*, 15 Mo. 331; *Reily v. Bates*, 40 Mo. 468; *Thomas v. Mallinckrodt*, 43 Mo. 58; *O'Flaherty v. Sutton*, 49 Mo. 583. (8) The instructions given as to the measure of damages were correct. See authorities cited under last point; also *McClanahan v. Porter*, 10 Mo. 751; *Griffin v. Regan*, 79 Mo. 73. (9) There is nothing, from first to last, in the case to show that the plaintiff ever did anything to surrender or forfeit her right of dower in the manner the law requires. *Grady v. McCorkle*, 57 Mo. 173; *Hindley v. Hindley*, 29 Hun (N. Y.) 318; *Shelton v. Shelton*, 29 S. C. 560.

BLACK, J.—This is an action commenced on the nineteenth of November, 1881, by Jane C. Farris and her present husband against William T. Coleman for the assignment of dower and for damages for the detention thereof. The plaintiff prevailed in the circuit court and the defendant appealed.

It is admitted by the pleadings that the plaintiff, whose name was then Jane C. Waters, and Daniel D. Page were married on the third of July, 1866, and continued to be husband and wife until the month of April, 1869, at which time Page died. The petition as amended on the trial states that Page was possessed and seized during the marriage of a leasehold estate in the north half of block 59 of the city of St. Louis, having a front on Market street of three hundred and six feet, to which the plaintiff never released her dower.

The answer denies the alleged seizin of Page, and then pleads several matters with a view of showing that, even if Page was seized of the premises during marriage, still the plaintiff is barred of her dower. The matters thus pleaded are in substance these : *First*, an antenuptial contract ; *second*, a contract made by the plaintiff and the heirs of Page on the second of June, 1869, after the death of Page, and known as the Chauvin claim contract ; *third*, the statute of limitations.

The plaintiff by her reply admits the execution of the marriage contract, but denies that it constitutes any bar to this action, and she goes on to state that it was procured from her by fraud and deception ; that Page had failed in business, and to cover up the property in question from his creditors allowed the property to stand in the name of Louis A. Benoist ; that to defraud plaintiff out of her dower he stated when the marriage contract was made that he possessed no real estate and but little personal property ; that she signed the contract believing the statement to be true ; that she did not know that he owned this property, until a short time before the commencement of this suit ; and that Page concealed from her the fact that he owned the property during the period of her coverture. She admits signing the Chauvin deed, but says it has nothing to do with the property in question, and that it was procured by fraud and imposition practiced upon her. Adverse possession, as alleged, is also denied.

1.   The pleadings it will be seen present many matters of defense, and the evidence took a still wider range.   In the view we take of this case it is necessary at the outset to eliminate a vast amount of matter which constitutes no defense whatever ; and first as to the antenuptial contract.

At the time plaintiff and Page were married, July 3, 1866, she was a widow in the prime of life and had several children.   Page was an old man and had two daughters, one married to the defendant Coleman, and the other to Mr. Bacon.   He also had a son named Francis.   Page and Mr. Bacon had been partners in the banking business, but had failed and owed large sums of money.   Thus matters stood when the marriage contract was executed.   The plaintiff testified that when she contemplated marriage with Mr. Page he was asked if he had any property which he could settle upon her, and he said he had no property ; that he had turned all of his property over to his creditors ; that he had made some money after the failure and was able to take care of her ; that he then promised to give her $50,000 in gold, and said they would make a marriage contract which would protect her.

The contract begins with this recital :

" Whereas a marriage is contemplated between Daniel D. Page and Jane Catharine Waters, both of the city of St. Louis and state of Missouri, and whereas it is agreed between said parties that the property now owned or which may be hereinafter acquired by each, shall not be affected by said marriage, and that neither party shall have any interest in the property belonging to or hereinafter acquired by the other, and whereas said Page is desirous that the said property of his intended wife shall be settled on her for her sole and separate use, free from his interference or control, and not subject to any debt of his."

The substance and effect of the stipulation following this preamble is, that Jane C. Waters assigns and

conveys to Samuel Gaty in trust all of the property, real and personal, which she then had or might thereafter acquire by gift, devise or purchase, for her sole and separate use, free from the control or debts of her intended husband.   The contract concludes with these words :

  " The said parties of the first and third parts hereby agree with each that neither party shall, by virtue of such marriage, have or acquire any right, title, interest or estate present or future in the property of the other ; but such property shall remain as if the party to whom it belongs was sole and unmarried.   The said Daniel D. Page hereby grants unto the said Jane Catharine Waters full power to make a last will and testament and assents to the said trust hereby created."

The proof shows that the plaintiff had no property, real or personal, at the date of the contract, or at the date of the marriage.   During the marriage Page caused the title to several parcels of real property to be placed in her name.   The evidence tends to show that during that time she received from him stocks and bonds to the amount of $20,000 or more.   On the other hand she says she never received any part of the $50,000 which Page promised to give her.   It is not claimed that any money or property was ever placed in the hands of Gaty, to be held in trust for her sole and separate use.

The trial court gave the jury various instructions on the subject of this marriage contract.   Those given at the request of the plaintiff proceed upon the theory, that, to bar dower by reason of property given to plaintiff by Page, the property must have been given according to, and in compliance with, the terms of the marriage contract, that is to say, it must have been given to her for her sole and separate use, and that it was not sufficient that real property was put in her name, or personal property marked with her name.   An instruction given at the request of defendant proceeds upon the theory, that the marriage contract constituted a bar, unless the

plaintiff was induced to sign the same by the false representation of Page that he had little or no property, and that he failed to make a fair provision for her, pursuant to the terms of said contract.

Now it is very clear that these instructions were misleading and ought not to have been given. The most casual inspection of the marriage contract will show that Page did not agree to give or settle upon his intended wife any property whatever. The agreement is, that the property which she had or might thereafter acquire should remain her sole and separate property, and that she should have and acquire no interest in his property. The real question is whether this contract on its face constitutes such a jointure as will bar dower. Our statute, section 2201, Revised Statutes of 1879, provides that, "If any woman, prior to and in contemplation of marriage, shall, in agreement of marriage contract with her intended husband, or other person, receive any estate, either real or personal, to take effect after the death of her husband, by way of jointure, as a provision for her support during life, and expressed to be in full discharge of all her claim of dower, such estate shall be valid, and a bar to dower in the estate of her husband."

This court in *Perry v. Perryman*, 19 Mo. 469, after speaking of the diversity of opinion under the English statutes, said : "Under this state of things, our statute was enacted, which, unlike the act of 27 Henry VIII., required that the provision made for the wife, if designed to exclude her from dower, or to put her to an election, should be expressed to be in full discharge of all her claims of dower. We are warranted, then, in the conclusion, that our statute was worded, as it is, in order to dry up this source of litigation." The court then proceeds to show that the same considerations apply to post-nuptial agreements. This ruling was followed in *Dudley v. Davenport*, 85 Mo. 462. Again, the statute contemplates that the woman shall receive some estate, real or personal, by virtue of the contract,

and the contract in this case does not profess to give her any property whatever. The contract concedes nothing to her but what she then owned or might acquire. As the contract does not profess or undertake to give the plaintiff any property, save that which she then owned, or might thereafter acquire, and as it is not expressed to be in discharge of dower, we are of the opinion the contract does not, at law, bar the plaintiff from dower in her husband's real estate.

It was ruled in *Johnson v. Johnson's Adm'r*, 23 Mo. 568, that the statute does not extinguish equitable jointures, and it may be that such an agreement as that now in question would constitute a good equitable jointure, if in point of fact the wife had an estate of her own before marriage. But the proof here is clear that plaintiff had no property whatever at the date of the marriage. As said in *Mowzer v. Mowzer*, 87 Mo. 440, it is against the policy of the law to allow a man, by an agreement before marriage which does not secure to the wife a provison for her support during life after his death, to bar her right of dower. The marriage contract does not bar the plaintiff from dower in her late husband's estate, and the jury should have been so told in plain terms. We do not say that the judgment should be reversed for the error in these instructions, for some of them were given at the request of the defendant. But for other reasons there must be a new trial, and it is in that view of the case that the foregoing observations are made.

2. Next as to tne contract concerning the Chauvin claim. On this part of the case the evidence shows that, from 1866 to the death of Page in 1869, he collected together considerable property in stocks, bonds and other securities. He caused several parcels of real estate to be conveyed to the plaintiff and other parcels to his son Francis. In the latter part of 1868, and while in New York, he prepared and had his wife and son sign a contract which states, that in case of his death all

property in their hands such as bonds, stocks and min-
ing shares, amounting to $100,000, and the real estate
which he had placed in their names, should be divided
equally between them.   He died in April, 1869, leaving
in the possession of his son, and under the control of
his wife, the bonds and stocks referred to in that agree-
ment, though probably amounting to much less than
$100,000.    This property the plaintiff and Francis
claimed ; but the defendant Coleman set up for his wife
a claim to a share, and this led to a bitter dispute,
which was compromised at the date of the contract con-
cerning the Chauvin claim.

That contract bears date the second of June, 1869,
is under seal, and was signed by plaintiff, by Francis
Page, by Coleman and wife, and by Bacon and wife.
The deed or agreement states that it was believed
Page died possessed of a valuable interest in six hun-
dred arpents of land near St. Louis, and that differ-
ences had arisen between some of the parties thereto.
Bacon and his wife then yielded up and surrendered all
claim they had to any of the estate of Page.   It is then
agreed that the title and interest of Page in the six hun-
dred arpents shall vest in the parties as follows :   One-
four this conveyed to Coleman and wife, and three-eighths
each to plaintiff and Francis Page.   The concluding
stipulation is in these words :   "And it is hereby further
agreed that all titles to lands and all property which for-
merly belonged to the said Daniel D. Page, and which
now stands in the name of the respective parties hereto
of record, or which belongs to either, growing out of
agreements in writing made during the lifetime of the
said Page, are confirmed and ratified."

The defendant insists that the clause of the contract
just quoted, read in the light of the circumstances under
which the contract was made, amounts to a release of
plaintiff's dower in the premises in question.   Page had
conveyed some parcels of land to the plaintiff, and

others to his son Francis, and he had executed to defendant Coleman a quitclaim deed to the land in dispute. But the agreement only undertakes to confirm existing titles. It does not undertake to make any new grant. If the plaintiff had a dower right in the land in suit before that agreement, that right is unaffected by the agreement. It cannot be said that plaintiff intended to release any existing dower right, save in the six hundred arpents. The court committed no error in excluding this Chauvin claim agreement. It and the matters connected with its execution constitute no defense, nor any evidence of any defense in this case.

3. The proof shows that Mr. Page at one time owned the undivided one-half of a leasehold estate in the north half of the before-mentioned block 59. The lease was for a term of ninety-nine years from the first of April, 1831, and Page acquired his interest therein in 1842. The property was divided into fifteen lots and was improved. Page, prior to his marriage with the plaintiff, occupied part of the property, but he occupied no part of it thereafter.

The defendant put in evidence the following title papers: A sheriff's deed to Louis A. Benoist, dated the twenty-seventh of August, 1866, conveying thirteen of the fifteen lots for the consideration of $56,000. This deed states that Benoist and two other named persons recovered a judgment against Page on June 15, 1866, in the sum of $74,033, foreclosing a mortgage on the premises in suit, and that Benoist purchased the thirteen lots under a special execution issued on that judgment. The mortgage was not put in evidence, but it will be seen the judgment of foreclosure was rendered before the date of the antenuptial marriage contract, though the execution sale took place after the marriage. A quitclaim deed from Benoist to Samuel Gaty, dated December 1, 1866, but not recorded until March 15, 1867. A quitclaim deed from Gaty to Edgar Logan, dated in April, 1867. A quitclaim deed from Logan to Edward Carpenter,

dated in August, 1867.   A quitclaim deed from Carpenter to the defendant Coleman, dated October 5, 1868. The foregoing deeds were all duly recorded, and each of them recites a consideration of not less than $56,000. Plaintiff put in evidence a quitclaim deed from Page to defendant Coleman, dated August 26, 1867, which was not recorded until March, 1874.

Other evidence is to the effect that Benoist made the quitclaim deed to Gaty by virtue of some arrangement or understanding with Page, but what that arrangement was does not appear ; that the deed was not delivered to Gaty until after the death of Benoist ; that Gaty got the deed at the request of Page and paid nothing for it.   Indeed, the evidence is strong to the effect that Gaty, Logan and Carpenter held the title for Page. Page resided in St. Louis and Coleman in New York. While the title was still in Gaty, Page by letter requested Coleman to purchase the property, and there was some correspondence upon the subject between Coleman and Gaty.   Coleman says he purchased the property at the request of Page and took the deed from Carpenter to whom the title had been transferred during the negotiations.   There is much evidence tending to show that Coleman purchased with full knowledge of the fact that Gaty, Logan and Carpenter held the title for Page, and that the title was thus kept in them to keep the property out of the reach of Page's creditors.

On this evidence the court instructed the jury, at the request of the plaintiff, that if Benoist bid in the property at the sheriff's sale, still if the jury believed there was an agreement between Benoist and Page that the former should hold the property for Page, and that Benoist did so hold it when the marriage contract was made and the marriage took place, then plaintiff had a conditional right of dower which became complete on the death of Page, unless the jury should find for defendant upon the defense of the marriage contract or statute of limitations.

There is, it will be seen, no evidence whatever showing, or tending to show, that Benoist held the title at the date of the marriage contract, or at the date of the marriage. He did not purchase the property until after the marriage, and of this there can be no question or doubt. This is a leading instruction in the case, and, as there is no evidence to support it in the respect just stated, it should have been refused, and the giving of it is reversible error.

There is no evidence whatever to impeach the *bona fides* of the foreclosure judgment, and, as the mortgage was made prior to the marriage, a *bona fide* sale under that judgment would cut out dower, though the sale was made after the marriage. If the plaintiff has, or ever had, any dower interest in the property, it is because Benoist or Gaty was seized of the property for the use of Page. As no instructions were asked or given defining what would constitute a seizin for the use of Page, we refrain from further observations upon this subject.

4. The evidence tends to show that defendant has been in the continuous adverse possession of the property from October, 1868, to the commencement of this suit. The plaintiff's cause of action accrued at the death of Page, in April, 1869, and this suit was commenced in December, 1881. Plaintiff testified that she did not know her late husband had an interest in the property until shortly before the commencement of this suit, though there are many circumstances in evidence tending to show that she knew how the property was held by Gaty and others, even before the death of her husband.

On this evidence the court instructed the jury, that if defendant had been in adverse possession of the property for more than ten years before the commencement of this suit, claiming it as his own, then the plaintiff could not recover, "unless the jury should also find

from the evidence that said D. D. Page owned the said property and that his said ownership was concealed by fraud from the plaintiff, and that she did not discover that fact within ten years preceding the bringing of this action."

This instruction appears to have been given at the request of the defendant, and, having been given at his request, he cannot complain of it on this appeal; but it should be considered in view of a new trial.

An action for the assignment of dower is an action for the recovery of real estate, and is barred by ten years' adverse possession after the cause of action accrued. *Robinson v. Ware*, 94 Mo. 678; *Beard v. Hale*, 95 Mo. 16. The statute concerning actions for the recovery of real estate makes no exception in cases where the plaintiff is ignorant of her rights, and it is not within the power of the court to insert such an exception. Even if section 3244, Revised Statutes, 1879, can be made to apply to such a case as the one in hand, there is no evidence showing, or tending to show, that the defendant in this case prevented the commencement of this action "by any improper act" on his part. That part of the instruction before quoted should be omitted.

What has been said disposes of the important question and renders it unnecessary to discuss the many other matters presented in the briefs. The judgment is reversed and the cause remanded. BARCLAY, J., absent, the other judges concur.