# B. F. COULTER, Executor, etc., Appellant, v. LEWIS M. LYDA, Administrator, etc., Respondent.

### Kansas City Court of Appeals, November 9, 1903.

1. **Marriage: JOINTURE: DOWER: CONSIDERATION: PUBLIC POLICY.** An agreement made in contemplation of marriage, and set out in the opinion, is *held* not to be such jointure as to bar dower. (Logan v. Phillips, 18 Mo. 23, distinguished, and the statute therein construed.)

2. ——: ——: ——: **ESTOVERS.** An agreement made in contemplation of marriage, providing that each party should hold his or her property free from marital control, can at most only bar dower and does not cover matters of estovers, such as year's allowance and the four hundred dollars which the widow may take in lieu of selected personal property.

3. **Administration: DOWER: WIDOW'S ALLOWANCE.** The allowances for the widow made by sections 106 and 107, Revised Statutes 1899, are held not to be dower, though the amount allowed by the latter section may be deducted from the dower.

4. **Husband and Wife: JOINTURE: DOWER: ESTOVERS.** A jointure agreement will not bar the wife of her dower unless it appears to have been made with that intent, and such rule applies also to the statutory allowances made to the widow.

5. **Administration: WIDOW'S STATUTORY ALLOWANCE: APPLICATION: LACHES: APPEAL.** After the death of her husband, a widow made an application to the probate court for her statutory allowances, and the husband's administrator waived service. The probate court took no action until the administrator's final settlement when the widow's executor appeared and pressed the claim and objected to the final settlement because of the administrator's failure to pay the widow such allowance. *Held*, the application was timely, and on the executor's appeal the circuit court became possessed of the case.

6. ———: ———: ———: ———: ———. On such an appeal the administrator can not defend on the ground that he has distributed the estate on the order of the probate court on final settlement, since the executor had ten days after the term to perfect his appeal, and payments made before that time were made at the administrator's peril.

Appeal from Randolph Circuit Court.—*Hon. John A. Hockaday*, Judge.

REVERSED AND REMANDED.

*Dysart & Mitchell* for appellant.

(1) The property and money sought to be recovered in this action was the absolute property and allowance of the widow out of the husband's estate, free from debts and free from distribution among his heirs; said property vested in the widow the moment the husband died and descended to her estate, and heirs, and did not belong to the heirs of the deceased husband. Secs. 105-109, R. S. 1899; In re Klostermann, 6 Mo. App. 314; Bryant v. McCune, 49 Mo. 546; Cummins v. Cummins, 51 Mo. 262; Hastings v. Meyers, 21 Mo. 519; Eans v. Eans, 79 Mo. 53. (2) It was the duty of the administrator to turn the $400 and the year's provisions over to the widow without any formal application in writing to him. Cummings v. Cummings, 51 Mo. 261; Woerner on American Law of Administration, secs. 77 to 92, inclusive; Whaley v. Whaley, 50 Mo. 577; Rhea v. Greer, 86 Tenn. 59; s.c ., 5 S. W. 595; Glenn v. Gunn, 88 Mo. App. 423; Freeman v. Washtenaw, 79 Mich. 390; s. c., 44 N. W. 856. (3) The administrator resists the claim of allowances on the ground that the antenuptial contract bars such allowances. The plaintiff claims that the said contract is without consideration, against public policy and void, it secures to the wife no provision for her support during life, after her husband's death. Mowser v. Mowser, 87 Mo. 437; R. S. 1879, secs. 2201, 3296; R. S. 1889, sec. 6869; R. S. 1899, secs. 4340, 4529, 2950; Glenn

v. Gunn, 88 Mo. App. 423; Pulling v. Durfee, 85 Mich. 34; s. c., 48 N. W. 48; Hasenritter v. Hasenritter, 77 Mo. 162. (4) The administrator further pleads against the widow's allowances the statute of limitations (secs. 185, 188, R. S. 1899). The plaintiff claims that the widow's allowances under the statute are not such claims as must be exhibited to the probate court in writing, sworn to, in two years or be forever barred. Those statutes only apply to debts owing by the deceased at the time of his death. Campbell v. Whitsett, 66 Mo. App. 444; Miller v. Miller, 82 Ill. 463; Rhea v. Greer, 86 Tenn. 59; s. c., 5 S. W. 565; In re Kichner's Estate, 19 Pa. Co. Ct. R. 216, 6 Pa. Dist. R. 137; Garrett v. Carson, 11 Mo. App. 290; Ferguson v. Carson, 13 Mo. App. 29; Bramell v. Adams, 146' Mo. 70. (5) The uncontradicted evidence shows that both the attorney for plaintiff and the attorney for the defendant had verbally called the attention of the judge of probate to the fact that the widow was claiming her allowances. Both he and the administrator knew it, and neither had the right to disregard it. The statute did not require that the claim be made in writing and by suit in court. (6) No formal claim in writing for these allowances was necessary. The claim was made to the administrator within a year after the death of the husband. Before the two years had passed demand was made of the administrator in writing and waiver thereon indorsed of any further notice by the administrator. The administrator had no right, in the face of these claims and of the statute, to pay out this money and ignore the claim and allowances to the widow given by the statutes of this State. The statute reserves to every person having an interest in the estate an appeal in such matters as are involved in this proceeding during, and for ten days after the term at which the matter complained of is decided, and if the administrator pays out the money of said estate before the time for appeal has elapsed, he does so at his peril. Secs. 278 and 279, R. S. 1899. (7) The appeal was properly

taken and defendant appeared in circuit court and the cause was tried *de novo*. Secs. 278 and 279, R. S. 1899.

*R. S. Matthews* and *Otho F. Matthews* for respondent.

(1) No property is the absolute property of the widow except articles as set forth in section 105, Revised Statutes 1899. There is a wide difference between a "right" and the "ownership of property," for the "right" may be enforced in different ways as provided by statute, or not enforced at all, at the will of the party to whom the right belongs. The court only can order the money paid. It can order it paid at any time before the time as provided in section 109 has expired—that is, before it is paid to creditors or distributees. Drowry v. Bauer, 68 Mo. 155; Cummings v. Cummings, 51 Mo. 261; Hastings v. Meyers, 21 Mo. 519. (2) The property allowed the widow under the provisions of sections 105, 106, 107 and 108, must pass through the probate court and be subject to the orders and judgments of probate court, and there can be no complete ownership in the same by the widow until this is done. It is the "right" that is absolute in the widow, to be exercised or not as provided by the statutes. McMillan v. Walker, 57 Mo. App. 220; Griswald v. Mattis, 21 Mo. App. 282. (4) The administration law requires the administrator to make final settlement at the end of two years from the time he takes letters. Sec. 232, R. S. 1899. He can not hold open the administration longer except cause is shown and the court grants longer time. (5) The personal dower and year's provisions sued for can not be recovered because the marriage contract is good between the parties so far as it affects their personal property. There is no question in this suit involving dower in real estate and the provisions of section 1950, Revised Statutes 1899, have no application to personal property. That section and the interpretation given to it by the

courts, simply requires a settlement on the contemplated wife to bar dower proper in real estate. The term "dower," properly defined, is a widow's interest in lands of her deceased husband. Bryant v. McCann, 49 Mo. 546; Dudley v. Davenport, 85 Mo. 462. (6) Marriage contracts, as provided by secs. 4324, 4325, 4326, Revised Statutes 1899, are good as to personal property. The parties were of age and free to contract as to their property, and the contract is good as between them. If there was no other consideration in the marriage contract to make it good, the marriage itself is sufficient consideration. Marriage is declared by the courts to be the highest possible consideration. 19 Am. and Eng. Ency. of Law (2 Ed.), 1233, and authorities cited, both in England and the American States. Bank v. Reed, 131 Mo. 553; Andrews v. Andrews, 8 Conn. 79; Otis v. Spencer, 103 Ill. 617, 40 Am. Rep. 617; Jacobs v. Jacobs, 42 Iowa 600. (7) At the time the appellant sought to have his claim allowed in the probate court of Randolph county, the administrator of George W. Saunders' estate had been discharged, and the probate court could acquire no jurisdiction to hear the cause, and no court by an appeal can have jurisdiction of the discharged administrator on a proceeding begun in a probate court. (8) The plaintiff had no standing in probate court to appeal from the judgments on final settlement of Lyda, administrator of the estate of George W. Saunders. Likewise he had no standing to appeal from the order of discharge of Lyda as administrator. He at the time was neither heir, distributee nor creditor of the estate of George W. Saunders, deceased. Section 278, R. S. 1899.

SMITH, P. J.—This is a controversy that originated in the probate court. The facts which gave rise to it may be stated in about this way: In 1888 George W. Saunders and Sarah McCanne were married in this State. Both parties to the marriage were somewhat ad-

vanced in years. They each had been previously married and had children by such mariages. Both of them owned considerable real and personal property. Just preceding their marriage they entered into a writen contract which was as follows:

"This agreement made and entered into this the 18th — — — ——, 1888, between George W. Saunders and Sarah A. McCanne, both of Randolph county, State of Missouri, witnesseth, that said George W. Saunders and Sarah A. McCanne, being about to enter into the bonds of matrimony and being desirous that each shall retain an exclusive right of control over his or her own property which they now own, theretofore, it is hereby mutually agreed and contracted that she, the said Sarah A. McCanne is to have complete and full control, ownership, possession and right to all the property she at this time holds for and during the time that said marriage shall exist and during the lives of both parties, be that property real or personal, and the property belonging to the said Sarah A. McCanne shall not be subject to disposal for the payment of the debts of said George W. Saunders that he may have heretofore or hereafter contracted.

"It is also understood and agreed between these contracting parties, the said George W. Saunders and Sarah A. McCanne, that the said property shall include all debts, credits, notes and accounts to which the said Sarah A. McCanne may at this or any future time be entitled, and in consideration of the above provisions, contract and agreement the said Sarah A. McCanne doth hereby agree and consent that the estate and property of the said George W. Saunders, both real and personal, shall be exempt and acquitted from all claims and rights she might otherwise acquire in the same by virtue of the contemplated marriage between the said Geo. W. Saunders and her, the said Sarah A. McCanne, either as dower or otherwise. It is further agreed that the pro-

ceeds of the estates of the said Geo. W. Saunders and Sarah A. McCanne shall be used for the support of both during their marriage or life of both parties.

"In witness whereof they, the said Geo. W. Saunders and Sarah A. McCanne have each hereto subscribed their names and affixed their seals this 18th day of September, 1888.

"Geo. W. Saunders.    (Seal.)

"Sarah A. McCanne.    (Seal.)

"Witnesses: R. B. Wilson, A. T. McCanne. Filed for record July 9, 1889, at 8 a. m.    J. C. Samuel, Recorder, by John N. Hamilton, D. C.    Fee 50 cents.    Paid."

The parties to this contract and marriage continued to live together until November 5, 1899, when the said Geo. W. Saunders died.    In December, 1900, the other party, the widow, also died, leaving a will wherein the plaintiff, Coulter, was named as executor.    The defendant, Lyda, was duly appointed administrator of the estate of the said Geo. W. Saunders.    The widow did not receive any of the allowances to which she was entitled under sections 105, 106, 107, 109, Revised Statutes 1899. During the currency of the administration and a few months before her death she, through her attorneys, demanded of said administrator the payment of such allowances; or, in other words, $150 in lieu of the year's provisions not on hand, and the additional amount of $400 in lieu of personal property under said section 109. These allowances were not paid her during her lifetime; and after her death her executor insisted that such allowances be paid to him.

The widow caused to be prepared an application to the probate court setting forth her right to the allowances specified in the sections of the statute already referred to, and praying for an order on the administrator for the payment of the same.    The administrator waived service of the application on September 10, 1901. It appears that the attorneys for her and the administra-

tor by agreement postponed the hearing of the subject-matter of the application by the probate court from time to time. The matter seems to have dragged along without any action being taken thereon by the court until after the death of the widow, until the term at which the administrator made his final settlement and until after the final settlement had been filed and approved, when the executor at that term appeared and urged a consideration by the said court of the application. The court refused to make the order, and thereupon the executor appealed from the order approving the final settlement discharging the administrator and refusing the application. The trial *de novo* in the circuit court resulted in judgment for the administrator, and the executor appealed.

The main question which the appeal has brought before us for determination is, whether the widow was cut out of her statutory allowances by the provisions of the antenuptial contract. There is no question but that the contract was understandingly and fairly entered into by both of the parties to it. It may be inferred from the facts and circumstances which the evidence discloses that Mr. Saunders and Mrs. McCanne found at the end of their courtship that the only impediment in the way of their marriage was the property owned by each of them. Neither being willing to enter into the marriage relation unless their right, title and interest to their property should respectively be unaffected and unchanged by the contemplated marriage. And it may be presumed that they knew, or were advised by some one who did know, that the impediment—the difficulty in the way of the marriage—could be removed by entering into a written contract providing for the retention by each of the title to his and her property, notwithstanding the marriage thereafter. They were no doubt influenced by considerations of this kind to enter into the contract. It is now required of us to determine what effect should be given to the contract so entered into.

In Bishop's Law of Married Women, section 422, is said, quoting from a Connecticut case (Andrews v. Andrews, 8 Conn. 79) : "There is perhaps no principle better settled than that any provision which an adult before marriage agrees to accept in lieu of dower will amount to a good equitable jointure." And within this principle it was held that where the antenuptial agreement secured to the wife her own real and personal property and the avails of her labor during marriage for her separate use, and this agreement was fully carried out, in consideration of which she was to have no dower in her husband's lands on his death, equity would enforce the contract as a bar to dower. The contract in Logan v. Phillips, 18 Mo. 23, was entered into in 1844 and was very much the same in its provisions as that here, and it was there held that under the law then in force the effect of the marriage was to immediately vest the personalty of the wife in the husband, and that the antenuptial contract impliedly created a trust which secured it for her future use.

Under the statute in force when the present contract was entered into, marriage was not of itself a gift by the wife to the husband of her personalty. Sec. 3296, R. S. 1879; Sec. 6869, R. S. 1889; Sec. 4340, R. S. 1899. It was further held in Logan v. Phillips that the provision made by the contract was, under the statute, a sufficient jointure to bar dower. But since under the statute in force when the contract here was entered into, the property owned by the wife at the time of the marriage did not pass to the husband but remained her separate property, it is plain that what was ruled in Logan v. Phillips can have no bearing in this case. The contract here vested in the wife no property right which she did not enjoy under the statute already referred to. It secured to her no right that she would not have had under the statute had it not been entered into. It was barren of any provision which was beneficial to her. By it she surrendered the martial rights which the law gave her in her

intended husband's property and in exchange for which she received nothing. In such case it can not be said, as it was in Logan v. Phillips, that "the provision made by the contract was a sufficient jointure to bar dower." Andrews v. Andrews, 8 Conn. 79. In such contracts the legal or equitable provision must be a fair equivalent to the dower estate to make it absolutely binding. M'Cartee v. Teller, 2 Paige 511; 4 Kent (14 Ed.), 55, 56.

But this is not a case of a settlement or jointure, but is one where the parties agreed beforehand that after marriage each should hold his or her antenuptial property to his and her separate use, and on the death of either of them neither should have any marital claim on the property of the other. There is a class of highly respectable authorities that hold such a contract in equity is a bar to dower. In one of these— Naill v. Maurer, 25 Md. 532—a leading case—it is said: "The contract was made in contemplation of marriage and, as clearly appears, was intended to bar or prevent the acquisition thereby of any right by either in the property of the other in order that the marriage proposed might take place. The main object in view was the consummation of the marriage, and it was to that end that the contract was executed. It seemed almost impossible to view the contract as founded on any other consideration, although the reciprocal character of the stipulations might be held to constitute one sufficient to make the contract binding and effective. But whether the marriage they proposed be expressly mentioned as a consideration or not, we think it must be regarded as such within the purview and meaning of the contract. . . .

"But this is not a case of jointure or settlement but of contract by which the appellee has expressly relinquished all right to claim any estate or interest in the property of her deceased husband—a contract executed in good faith by parties legally competent, and sustained

by a good consideration. . . . The contract constitutes an equitable bar to the claim (to dower) sought to be enforced by the bill.'' 1 Bishop's Law of Mar. Wom. secs. 422, 423; Cauley v. Lawson, 5 Jones Eq. 132; Findley v. Findley, 11 Gratt. 434; Gelser v. Gelser, 1 Bailey's Eq. 387; Dyke v. Randall, 13 Am. & Eng. L. & E. 404.

But the claim here is not for dower but is for something in its nature somewhat resembling the estovers allowed by the common law—an allowance made by the statute to the widow whether she have dower or not in the estate of her deceased husband. The allowances given her by the sections of the statute previously adverted to is not dower, though that given by section 107, ante, is required to be deducted from her dower where there is property of the husband in which she is entitled to have it. The allowance provided for by this section is not identical with dower, but is a different thing. They resemble one another in that they both vest absolutely in the widow on the death of her husband, and in being exempt from his testamentary dispositions. They differ in that she may select articles she desires under the statute and in their exemption from liability for the debts of the husband (section 108), whereas the right to share in the personalty given by section 2937 is subject to debts. Glenn v. Gunn, 88 Mo. App. 423 (l. c. 427, and authorities there cited). If the provisions of a contract of this kind, as decided by Naill v. Maurer, supra, intercepts the rights to dower, it is quite difficult to see why such a provision would not bar the right to the statutory allowance given by said section 108, were it not for the considerations presently to be mentioned.

It has been expressly decided in this and other States that a jointure to the wife unless it appear in satisfaction of dower, will not bar that right. Perry v. Perryman, 19 Mo. 469; Farris v. Coleman, 103 Mo. l. c. 360; Bealey v. Blake, 153 Mo. l. c. 671; Swain v. Perrine, 5 John. Ch. 482; Wessley v. Wessley, 16 B. Mon.

455; Bubier v. Roberts, 49 Maine 460; Grim v. Porter, 7 Porter (Ala.) 19. If by analogy the same rule would apply to the widow's statutory allowance as to her dower, the widow in this case could not be estopped to claim the former, because there is nothing in said contract showing that she accepted the provisions therein made in satisfaction of such allowance; nor does the record disclose any act of hers from which it can be fairly inferred that she did. Again, the case of Mowser v. Mowser, 87 Mo. 437, was one where the widow applied for the allowance provided in said section 107. This application was resisted on the ground that the widow by an antenuptial parol contract had agreed *with her husband that on the death of either, the other should not claim any interest in the estate of the deceased.* In the opinion in that case it is said she received nothing as a consideration for the alleged agreement. Her money was secured by section 3296—now section 2950, Revised Statutes, 1899. Section 2201—now section 2950, Revised Statutes 1899 — provides that, "if any woman prior to and in contemplation of marriage, shall, in agreement or marriage contract with her intended husband, or other person, receive any estate, either real or personal, to take effect after the death of her husband, by way of jointure, as a provision for her support during life, and expressed to be in full discharge of all her claim of dower, such estate shall be valid and a bar to dower in the estate of her husband.

"Even if a parol agreement can be allowed to defeat dower, the widow must receive under it real or personal property as a provision for her support during life; it is against public policy to allow a man, by an agreement before marriage, which does not secure to the wife a provision for her support during life, after his death to bar her right to dower. The statute sanctions no such agreement." While it is erroneously assumed in the opinion that the provision made for the widow by said section 107 is dower, yet the reasoning therein is ap-

plicable to this case, no difference whether that statutory provision be termed dower, allowance, or what not. The question there as here was whether or not the widow's right to the benefit of the provisions of sections 108, 109, was intercepted and cut off by a contract similar in its effect to this. It is true the contract there was by parol while here it was in writing, but it was in effect held that even if it had been in writing that it was void as against public policy. Here, the widow received nothing under the contract so that there was no jointure or other consideration to bar her dower or allowance. It made no provision for her support during life. She was not even allowed the common-law "quarantine and estovers." Such a contract could bind no one.

It sufficiently appears that the widow applied, during her lifetime and during the currency of the administration, to the administrator for the statutory $400 to which she was entitled under the statute, and that he failed, as his statements show, to turn the same over to her. It seems to us that it was his plain duty to do this; and if during the term of the probate court at which he made his final settlement and was ordered to be discharged, that court's attention was called by the application of the widow to the fact that he had so failed, then that court should have ordered a performance by him of this neglected duty. And this, even if his final settlement had been approved and the order for his discharge entered of record.

All the parties in any way interested in the settlement had a right, during the term at which it was made, to come in and interpose objections to it. The court did not lose jurisdiction until its final adjournment. The executor had until ten days after the adjournment to take his appeal from the final settlement, etc., R. S. 1899, secs. 278, 279. And when the cause was removed by his appeal into the circuit court, that court was authorized to hear and determine the same anew without regarding any error, defect or imperfection in the pro-

ceeding in the probate court. R. S. 1899, sec. 285. The circuit court thus became possessed with jurisdiction to pass upon said final settlement as though in the exercise of its original jurisdiction and without reference to the action of the probate court in respect thereto. If the administrator paid out to the distributees of said estate the amount specified in the order of distribution made by the probate court, before the expiration of the term in which the executor had a right to take his appeal, or afterwards, he acted with undue haste. Such action can avail him nothing. We know of no statute of limitations applicable to a claim of this kind except section 109 which provides that where the widow does not receive the property in kind that the court must order the money to be paid her before *it is paid out for debts or distributed.* This section must be construed with reference to the other sections of the statute in relation to appeals already referred to. It is not to be supposed that when a probate court makes an order allowing and classifying a demand, or of distribution, or approving a final settlement, that the administrator without waiting to see whether such orders are appealed from, can immediately pay such demand, or distribution, and when an appeal is timely taken from such orders, and when the demand or order of distribution or settlement comes up for trial or hearing *de novo* in the circuit court, be then heard to say: "I have paid out the money of the estate and, therefore, there is none in my hands belonging to it which can be applied to the payment of the widow's claim for the allowance under section 108. And this is an end of the matter even if she did apply to me and to the probate court for an order requiring me to turn over to her the amount of such claim at the term I made my final settlement and before she or her representative took the appeal." If such a flimsy excuse could avail the administrator on appeal, then the right to an appeal and a trial *de novo* in the appellate court would be valueless rights.

It is the duty of an administrator, before he pays a demand which the probate court has ordered to be allowed and classified or the share of any distributee that has been ordered to be paid, to wait and see whether any one interested in the estate appeals from such order or orders. Until the right to appeal expires such orders or judgments of the probate court are only provisional and subject to be reversed or set aside on appeal. In the present case the payment made to the distributees of all the money of the estate in the hands of the administrator was not made at a time or under circumstances that can prejudice the widow's claim. The orders approving the final settlement, discharging the administrator and refusing to make the order for the widow's allowance, were all made at the same term and related to the same matter, and it is impossible to see why an appeal was not sufficient to invest the appellate court with complete jurisdiction.

It results that the judgment of the circuit court must be reversed and cause remanded to be proceeded with in accordance with the views herein expressed. All concur.