In the Matter of the Estate of Sarah W. Flynn, Deceased, Lawrence C. Flynn, Respondent, v. William B. Kinealy, Executor of the Last Will of Sarah W. Flynn, Deceased, and Winifred Bryan, a Residuary Legatee, Appellants.— 67 S. W. (2d) 771.

St. Louis Court of Appeals. Opinion filed February 6, 1934.

Motion for rehearing overruled February 21, 1934.

*Gerald B. O'Reilly* for appellant, William B. Kinealy, Executor.

*C. L. de Renthel* for appellant, Winifred Bryan.

1198

*Geers & Geers* for respondent.

*James Waters, Jr.,* of counsel.

HOSTETTER, P. J.—This suit originated in the Probate Court of the City of St. Louis.

The facts are as follows: Sarah W. Flynn died in the City of St. Louis on June 11, 1931. She left the respondent, Lawrence. C. Flynn, her husband, surviving, but left no lineal descendants, but did leave collaterals, one of whom was William B. Kinealy, her brother, who was named executor and trustee under her will. Her will was duly probated in the Probate Court of the City of St. Louis, on June 22, 1931, and letters were issued to her surviving brother, William B. Kinealy as Executor without bond.

The inventory disclosed that the estate of Sarah W. Flynn amounted to $20,316, of which $14,516.78, was personal property, and the remainder was real estate.

The will, after providing for the payment of her debts, made certain special bequests amounting to $2350. In the sixth clause of the will she gave to her brother, William B. Kinealy, or, in case of his death or inability to act, to her niece, Winifred Bryan, $1000 to be loaned out at interest and the interest used by the trustee for the care of her pet dog "Cutie," and, upon the death of the pet dog the $1000 was to become a part of the trust fund created in the following paragraph of the will. Said paragraph being the seventh clause of the will and being as follows:

"I give, devise and bequeath to my brother, William B. Kinealy, if he be alive at the time of my death, but if he be dead or unable to act, then to my niece, Winifred Bryan, all the rest and residue of my estate, be it real, personal or mixed and wherever situated that I may own or be entitled to at the time of my death, in trust, however, for the following uses and purposes, to-wit: to hold, control, manage, invest and reinvest all or any part thereof, including the right to sell, mortgage or pledge and borrow money upon same, and pay the costs and expenses of managing the property and performing the trust and to collect all of the rents, profits and income derived from the property and management of same, and pay over unto my husband, Lawrence C. Flynn, at such time as he wishes, the whole of the net income realized by the trustee during the continuance of this trust. The trustee shall have power to pay over to my said husband, or expend for him, any part of the principal of the trust fund, in case any emergency or necessity therefor should arise, which in the judgment of said trustee shall make such payment or expenditure advisable. The beneficiary of this trust shall not encumber, sell or convey or in any manner anticipate his interest in this trust fund, principal or income, and any such sale, transfer, assignment or incumbrance shall be void and non-enforcible; and if any creditor shall attempt by suit or otherwise to subject the interest of the beneficiary herein to the payment of any debts of such beneficiary, then and thereafter the trustee shall not be obliged to make

the payments, as hereinbefore provided, to such beneficiary, but during the rest of the period during which the trust is to continue may at his discretion apply said income, or such part thereof, as he thinks best, for the support or maintenance of the beneficiary. This trust shall continue during the life of my husband, and at his death this trust shall terminate and the trustee shall pay over to my brother, William B. Kinealy, the sum of One Thousand Dollars, and said trustee shall divide the remaining part of said trust fund, both principal and interest then on hand, into eight equal parts, and shall pay over and deliver two of said parts to each of my nieces, Winifred Bryan, Grace Pearson and Virginia Jackson, or their heirs *per stirpes*, and shall pay over and deliver one of said parts to my niece Sarah Wentworth, and one of said parts to my grandniece, Patricia Kinealy.''

In the eighth clause she appointed William B. Kinealy, her executor.

Her widower, Lawrence C. Flynn, on the 4th day of April, 1932, filed his renunciation of the will and his election to take under the law, and on the 21st day of June, 1932, he filed his motions, one for allowance of a reasonable appropriation out of the personal assets of the estate under the provisions of Section 107, Revised Statutes of Missouri, 1929 (1 Mo. Stat. Ann. 69), in lieu of a deficiency in the grain, meat, vegetables, groceries, etc., mentioned in the preceding Section 106, and the other for the allowance of $400 under the provisions of Section 108, Revised Statutes of Missouri, 1929 (1 Mo. Stat. Ann. 70).

Upon a hearing in the probate court the sum of $900 was allowed in the widower's favor for his year's provision and $400 as absolute property under the provisions of said Section 108. From this action of the probate court in allowing said sum of $900 as year's provision the executor and Winifred Bryan, one of the residuary legatees under the will, appealed to the circuit court.

Upon a hearing *de novo* in the circuit court, that court likewise allowed the sum of $900 in favor of the widower for his year's provision and $400 as absolute property and from this judgment of $900 allowance the executor and Winifred Bryan, a residuary legatee, both perfected their appeal to this court.

Appellants make three assignments of error. The first one is that the trial erred in holding that the will did not provide for the widower in exclusion of all statutory allowances. The second one is that the widower was estopped from renouncing the will and the third is that the judgment was excessive.

The testimony of Lawrence C. Flynn, the widower, was substantially as follows: That he lived in Belleview, Iron County, Missouri; that it cost him about $900 a year to live in the manner in which he did live; that a part of the time he boarded, at a cost

of one dollar a day; that that included his meales but not his room, that he paid rent for the house, and paid for his washing and clothes and everything else; that he paid $30 a month board; that the personal property and real estate of his deceased wife inventoried around $20,316; that he filed a motion in the probate court asking for $900 allowance and also for $400 allowance; that he had been getting small checks from Mr. Kinealy, which he supposed were from the rent of houses, that is what Mr. Kinealy reported to him; that Mr. Kinealy took a fourth out of the rents that he collected, that is what Mr. Kinealy told him; that he cashed these checks for about nine or ten months and finally sent one check back; that Mr. Kinealy had told him that his receiving the checks constituted no interference with his right to renounce the will; that Mr. Kinealy had not advised him of his right to renounce until four or five months after the death of his wife; that Mr. Kinealy was a brother of his deceased wife and a lawyer; that Mr. Kinealy told him that the receiving of these checks would never interfere with his renouncing the will; that Mr. Kinealy came to Arcadia and told him that down there; that included in some of these checks was $5 for the dog and also some small amounts for chickens and eggs which Mr. Kinealy had bought.

The witness also testified that Mr. Kinealy had had an undue influence over his (witness') wife, all her life. In answer to a question by appellants' counsel whether he did not know that Mr. Kinealy was collecting the rents and turning them as trustee, witness replied that he didn't know what he (Kinealy) was doing.

The testimony of Mr. Kinealy, the executor, the brother-in-law of Lawrence C. Flynn, was to this effect: The first conversation he had with Mr. Flynn regarding the will was at the undertaker's parlor the day following his sister's death; that he told Mr. Flynn about his sister's will; that he told him that his sister had come down to him and wanted him to draw a will putting everything in trust except a few thousand dollars which she wanted to give to her nieces; that he told his sister that there was no good in drawing the will unless her husband would consent and told her to go back home and talk it over with her husband and if he consented it was all right; that after this conversation she came back to him and said that she discussed it with her husband and that he said it was all right; that Flynn answered in that conversation by saying that she never discussed it with him, or that he would not discuss it and that he told her that whatever she did was all right with him; that then he told Flynn that if he was not satisfied he could renounce the will and take one-half of the estate; that he had better come down to his (witness') office, and that he had better make up his mind whether he wanted to take under the will or under the statute; that Flynn came back three or four times and he discussed with Flynn whether he would take under the will or under the statute and that finally Flynn told him that he would take under the will; that he further

told Flynn that he (witness) could take charge of the real estate, collect the rents, and suggested holding out about a quarter of the rents as a kind of savings to pay taxes and interest and that Flynn made no objection to it; that Flynn came up after the first of July and said he had no money to take care of the charge for the keep of the dog "Cutie," and that he (witness) told him that the will provided $1000, the income of which was to pay for the keep of the dog, which would mean $5 per month; that he would convey $1000 out of the estate to himself as trustee and would advance Flynn $5 a month, and, that that was done up to the time the dog died and that after the dog died he continued to give Flynn the $5 in his rendered statements; that he also included in these statements small amounts for chickens and eggs which Flynn sent to him.

On cross-examination Mr. Kinealy admitted that he did not think that he had ever advised Flynn that he had a whole year in which to renounce the will.

The statement and check of April 1, 1932, was returned uncollected by Flynn with the following letter:

"April 9, 1932.

"Mr. William B. Kinealy, Attorney at Law,
"705 Olive St., St. Louis, Mo.
"Dear Sir:

"Am returning herewith your check No. 8669 payable to my order for $31.00, including $5.00 egg money.

"As you no doubt know, I filed my renunciation and election on the Estate of wife, Sarah W. Flynn, and since I have renounced under the Will I have no right to accept benefits under the Will.

Yours very truly,

"LAWRENCE C. FLYNN."

Witness Kinealy testified further that the total amount received by Flynn was $289.25 from the rent of the real estate and $40 from the Cutie (dog) trust.

Proof was made of the proper recording of the renunciation of the will and election to take under the statute.

We do not construe this will as depriving the surviving husband of his statutory allowances now provided by Sections 106, 107 and 108, Revised Statutes of Missouri, 1929 (1 Mo. Stat. Ann. 67, 72). Such property has been held to become the absolute property of the surviving spouse.

The general tenor of the holding of our courts on that question is to the effect that in order to accomplish that result there must be an express provision in the instrument that the benefits set out therein shall be in lieu of such statutory provisions. In other words, that the surviving spouse cannot be deprived of these statutory allowances by implication; that the design to substitute one for the other must be unequivocally expressed. [Bryant v. McCune, 49 Mo.

546; Williams v. Schneider (Mo. App.), 1 S. W. (2d) 230; Hasenritter v. Hasenritter, 77 Mo. 162; Hastings v. Meyers, 21 Mo. 519; Register v. Hensley, 70 Mo. 189; Glenn v. Gunn, 88 Mo. App. 423, 443; Mowser v. Mowser, 87 Mo. 437; Coulter v. Lyda, 102 Mo. App. 401, 76 S. W. 720.]

We are not impressed with the argument advanced by appellants that the alleged liberality of the will to the widower in the *instant* case should negative the idea that he should get, in addition to its provisions for him, those statutory allowances.

In Peugh v. McKinney (Mo. App.), 211 S. W. 83, the will was much more liberal to the widow than is the will in the *instant* case to the widower, yet the court held that the widow was not debarred from asserting her right to the statutory allowances.

In determining the question whether Lawrence C. Flynn became estopped from renouncing the will and electing to take under the law, we necessarily are required to determine the relation of the parties, the nature of the provisions and his ability or inability to acquire a full understanding of his rights under the will and whether what he did is relied upon as creating an estoppel against him was done through ignorance or with full knowledge of all the facts in relation to his rights and the effect of his action accepting the rent checks.

In the first place, it is plainly apparent that, he being a layman, was ignorant of his rights unless he was made acquainted with them by some disinterested person who possessed technical knowledge of the matters involved.

The will, written by the testatrix' brother, William B. Kinealy, a lawyer, was carefully worded and an adroit document, in that a layman without the aid of disinterested legal advice would not be able to discover how the income from the estate, ostensibly designed for the widower, could be manipulated and diminished almost to the vanishing point at the arbitrary will of the trustee.

The meager, doubtful and uncertain provisions for the surviving husband would, of course, be ascertainable by the trained legal mind, but the evidence does not disclose that its provisions insofar as it related to Lawrence C. Flynn was ever explained to him by his brother-in-law on whom he had a right to rely for full information and full and correct advice for his own best interest.

The will gave the trustee full and absolute control of the residuary estate and gave him power to "pay the cost and expenses of managing the property" and to pay the whole net income to Lawrence C. Flynn at such time as he (the trustee) wished.

Under this clause the trustee could arbitrarily choose his own time to pay this net income over, regardless of the needs and wishes of the beneficiary.

The trustee was likewise given the power to pay over the Flynn any part of the principal of the trust fund in case any emergency or necessity therefor should arise, but it was left wholly to the trustee's judgment when such payment was advisable.

It will be noted that the will simply gave the trustee the power to pay over to the surviving husband or expend for him a portion of the principal of the trust fund, but gave him no direction so to do.

The will also prohibited Flynn from incumbering, selling, conveying or in any way anticipating his interest in the trust fund, principal or income.

The will also provided that if any creditor of Flynn's should attempt by suit or otherwise to subject his interest to the payment of any debt "then and thereafter the trustee shall not be obliged to make the payments, as hereinbefore provided, to such beneficiary, but during the rest of the period during which this trust is to continue (that is, to Flynn's death) may at his discretion apply said income, or such part thereof as he thinks best, for the support, or maintenance of the beneficiary."

It will be noted that under this provision any creditor, hostile or otherwise, would have it in his power by bringing such suit, to put it in the power of the trustee to shut off all support and maintenance payments; or a hostile trustee could collude with a hostile creditor and bring about this result which would be so direful to the beneficiary.

The testimony of Flynn is to the effect that he was advised by his brother-in-law that his reception of the rent checks would in no manner prevent him from renouncing the will. The executor denied that he made any such statement, but did admit that he did not give him full information about his right to renounce in that he did not remember that he ever told him that he had a whole year within which to make his renunciation.

We are confronted with a situation in which the interest of the executor-trustee conflicted with the interest of the beneficiary. Mr. Kinealy himself was a residuary legatee to the extent of $1000 and his blood kin were also interested as residuary legatees and it was not to his interest or the interest of his blood relatives that Flynn should be given the full information which might result in him renouncing the will. So self-interest would naturally prevent him from making full disclosures to his brother-in-law of his rights and interests and the nature of his interests and to what extent his life estate was subject to be diminished by the arbitrary wishes of the trustee and it would naturally leave the temptation on the trustee's part to encourage his layman brother-in-law to indulge in a course of action which might result in his loss of power to renounce the will.

That construction might be put upon the action of the executor-trustee in continuing to pay Flynn $5 per month dog fund money after the dog was dead.

The meager record before us does not disclose that the executor ever furnished Flynn with a copy of the will.

There is no question in our mind but what Flynn received the rent checks without understanding the effect or nature of the same, or where they came from, whether they came from the executor or the trustee, nor did he realize the effect of reception of same or the construction which might be put upon his reception of same to abridge his rights in respect to the renunciation of the will.

The letter which was signed by him in which he sent back the last check received from Mr. Kinealy after he had renounced the will was evidently prepared by a lawyer who was conversant with the real facts and who was acting for Mr. Flynn's interest.

The fact that Flynn told the executor that he would not renounce the will would not prevent him from renouncing or have any effect on his right to renounce, provided he exercised his right within the year.

It is apparent that up to the time he sent back the check with the letter, he, by reason of his lack of information and lack of understanding of the contents of the will and his inability to comprehend or realize that his reception of the rent checks might be construed as a bar against his right to renounce the will, did not know the effect of his acts in respect thereto or what construction might be put upon them.

However, in this case we find that the amount received by him from the rents was approximately $300. His conduct in receiving the rent money did not injuriously affect anyone else's rights under the will or cause the executor or any of the legatees to alter their position to their disadvantage in any respect. In fact, no one was injured or prejudiced by anything Flynn did.

Under the law, even with the will unrenounced, he had an absolute right to receive much more money under his statutory allowances than he had received through these rent checks. What he had received in the way of rents or out of the dog fund could be charged up to him out of these statutory allowances and no one would be the loser thereby.

He made his renunciation about ten months after the death of his wife. The estate was not yet ripe for closing. Everybody who had any interest under the will was charged with constructive knowledge at least of the widower's right to renounce it and that that right continued for the space of one whole year. The executor could not legally have done anything in the ten months' period which could not be fully corrected after the renunciation and election had been filed. Under Section 236, Revised Statutes of Missouri, 1929 (1 Mo. Stat. Ann. 154), he could not be compelled to make distribution or pay legacies within the first six months after grant of letters unless the legacies were perishable or subject to injury if retained for six months.

There is nothing in the evidence to show that any action was taken or any payments made to legatees during the first six months.

Section 237, Revised Statutes of Missouri, 1929 (1 Mo. Stat. Ann. 155, 156), provides that the executor could not be compelled to pay legacies or make distribution within one year from the date of his letters unless bond and security should be given by the legatee or distributee to refund in case of necessity thereafter arising.

Section 238, Revised Statutes of Missouri, 1929 (1 Mo. Stat. Ann. 156), provides that legacies or bequests other than the residuary ones will bear six per cent interest from twelve months after the date of the death of the testator. So that the estate was not, and could not be affected or diminished by the payment of any interest.

So that we have reached the conclusion that the widower in this case was not estopped from renouncing the will and electing to take under the law and cite the following cases supporting our conclusion: Goessling's Estate, 287 Mo. 663, 230 S. W. 613; Garesche v. Levering, 146 Mo. 436, 48 S. W. 653; Loud v. St. L. U. T. Co., 298 Mo. 148, 249 S. W. 629; Bretz v. Matney, 60 Mo. 444; Register v. Hensley, 70 Mo. 195; Spratt v. Lawson, 176 Mo. 175, 75 S. W. 642; Reddick v. Walsh, 15 Mo. 537.

As to the third assignment that the allowance of $900 is excessive, we also rule that point against the appellants.

It has been uniformly held that the amount to be allowed under Sections 106 and 107, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann. 67-70), is within the sound discretion of the court. [Williams v. Schneider (Mo. App.), 1 S. W. (2d) 230; Nidy v. Rice, 44 S. W. (2d) 196.]

The probate court and the circuit court both having fixed $900 as the proper amount to allow for the year's provision after hearing evidence thereon, we cannot say that either court abused its discretion in that respect. It follows that the judgment of the trial court should be and is hereby affirmed. *Becker* and *McCullen, JJ.*, concur.