GEORGE ANN BRANDON, Appellant, v. W. H. DAWSON *et al.*, Respondents.

Kansas City Court of Appeals, November 14, 1892.

1. **Husband and Wife:** DISPOSITION OF PROPERTY TO DEFEAT DOWER. A wife by force of the statute has dower in her deceased husband's personal property, but the property must be his at his death. The husband has the right to dispose of his property by gift or otherwise, provided such disposition is not testamentary and made with a view to defeat dower.

2. ———— : GIFTS TESTAMENTARY: CAUSA MORTIS: DEFINITIONS: FRAUD. A gift testamentary is one intended to have its operative effect after the donor's death. A gift *causa mortis*, to defeat dower, must be made with that intent. But whether merely showing a gift *causa mortis* without more would make a case of fraud against dower, *quære*. The evidence in this case as to the intention to defraud the wife of dower is not of such persuasive character as to justify the disturbance of the chancellor's finding.

3. **Gifts:** EVIDENCE OF CHARACTER: TESTAMENTARY. Where the donor in good health hands the donee a pocket-book wrapped and labeled for the donee, which contains certain notes with the donor's indorsements thereon, the donor at the time stating that the notes were the donee's, such conduct goes to show that the donor did not look upon his gift as testamentary.

4. ———— : WHEN COMPLETE: ACCEPTANCE. Where the donor hands such pocket-book and notes to the donee, it is *held* on the testimony in this case the gift was complete, and accepted, though the package was returned for keeping until some other time.

5. **Witnesses:** HUSBAND AND WIFE: MARRIAGE CONTRACT: DOWER. In an action by the widow to set aside certain gifts of personalty made by the husband in his lifetime on the ground of defrauding her of her

dower, she is a competent witness and cannot be deprived of her right to testify by reason of a marriage contract, which was void, as it deprived her of her dower, though she may be disqualified to testify to admissions or conversations with herself or another, or the acts of the other in connection with such conversation which might be explained by it.

*Appeal from the Callaway Circuit Court.* — HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

THIS suit was instituted by plaintiff in the circuit court of Callaway county, as the widow of Francis Brandon, deceased, in July, 1891, in which she sought to have annulled and set aside the gift and transfer of certain notes made by her husband in his lifetime to defendants, on the ground of fraud, charging and alleging in her petition that such gift and transfer were made with the intent and purpose of depriving and defrauding her out of her proper allowance and dower due her out of the personal estate of her deceased husband. The evidence shows that long before his death, and while he was in health, and before his last illness, being the owner of several promissory notes amounting in the aggregate to $1,700, he indorsed them, put them together in a pocket-book, and placed on and around the pocket-book a wrapper, upon which was written "for W. H. Dawson and J. N. Brandon." This book so containing said notes being thus labeled he placed in his desk in the office of the probate court, which desk he kept locked. A short time thereafter he took the book containing the notes from the desk, and handed it to the defendant, W. H. Dawson, stating to him at the time that the notes were for him and Newton Brandon, the other defendant. Dawson received into his possession the notes, and then had deceased to place the book back into the desk, saying he would get them at some

future time. The book was then left in the desk. Seven or eight days next before the death of the deceased he asked the defendants if they had taken the notes from the desk. They said they had not. He then delivered to them or one of them the key to the desk, and told them to get the pocket-book and notes. They received the key, and kept it in their possession until after his death. Deceased on different occasions prior to his death spoke of the disposition he had made of the notes. Three or four days next preceding his death, when he was perfectly rational, he divided his personal property among his wife and children, giving the greater part to his wife, now his widow. He left little or no personal property at his death—no debts. That, prior to and in anticipation of the marriage between the plaintiff and deceased, they entered into a marriage contract and agreement, by the terms and tenor of which the one surviving should turn over to the heirs and representatives of the other all property which came into possession of the survivor by reason of the marriage contract. Judgment was given for defendants, and plaintiff appeals.

*Jas. B. Snell* and *Bailey & Tincher*, for appellant.

(1) The court erred in excluding the plaintiff as a witness. She was a competent witness in her own behalf. The facts, that she was the widow of deceased and had entered into a marriage contract with him, did not disqualify her. Plaintiff should have been allowed to prove facts by her own testimony tending to establish the fraud. *Hoyt v. Davis*, 30 Mo. App. 313; *Spradling v. Conway*, 51 Mo. 51. (2) If the court held that plaintiff is barred by reason of the antenuptial contract, its holding was erroneous; as, *first*, the contract was not pleaded; *second*, the contract is

void on its face, being based on no sufficient considera-
tion, and not stipulating that the wife, for sufficient
consideration, was to relinquish her dower. It is no
legal jointure. General Statutes, 1889, sec. 4529;
*Dudley v. Davenport, Adm'r,* 85 Mo. 462; *Mouser v.
Mouser,* 87 Mo. 437; *Farris v. Coleman,* 103 Mo. 352.
Nor is it an equitable jointure. It does not secure to
her her own property, if, indeed, she had any. The
old doctrine of "equitable jointure" might prevail were
it not for our statute of 1875, making the property and
earnings of the wife her separate estate; but without
invoking that point this contract, in its audacity, even
provides that the property of the wife, if any she had
or might have, should be turned over to the husband
for their joint support. (3) If the court found that,
under the law and the testimony, no fraud has been
perpetrated, its finding is certainly erroneous. The
husband cannot deprive her of this right by will, nor
by any contrivance testamentary in its character.
*Stratt v. O'Neil,* 84 Mo. 68; *Crecelius v. Horst,* 89 Mo.
356; *Farris v. Coleman,* 103 Mo. 361. Her rights are
not only legal but moral. She is a care and favorite of
the law. *Mouser v. Mouser, supra;* 1 Story on Equity
[7 Ed.] secs. 629, 630, pp. 627, 629; *Kenrick v. Cole,* 61
Mo. 577; *Hoyt v. Davis,* 21 Mo. App. 240. (4) But,
if it be claimed under the *dicta* in *Crecelius v. Horst,* 89
Mo. 359, that the *donatio causa mortis* must also be
shown to have been made with intent to defraud her
of dower, then the evidence in this case abundantly
shows that intent.

*Crews & Thurmond* and *I. W. Boulware,* for
respondents.

(1) . The statutes only endow the widow of person-
alty belonging to the husband at the time of his death.

Revised Statutes, 1889, sec. 4517; *McLaughlin v. McLaughlin,* 16 Mo. 242; *Stone v. Stone,* 18 Mo. 389; *Tucker v. Tucker,* 29 Mo. 350; s. c., 32 Mo. 464. (2) The husband is the absolute owner of his personal property; has the unrestrained right to dispose of it by gift, sale or otherwise during marriage. (3) The title and ownership of the property passed at the time the pocket book containing the notes was delivered to defendants several months or a year preceding the donor's death, accompanied by the words, "Take this; they are yours and Newton Brandon's," the defendants. This was a full and complete gift, a gift *inter vivos.* The notes were indorsed by the donor. 8 American & English Encyclopedia of Law, p. 1313, and authorities cited. There was an actual delivery and acceptance. An actual and positive change of possession. (4) Even the delivery of the key to the desk in which the notes were, accompanied by words expressing and implying a gift, is a sufficient delivery. 8 American & English Encyclopedia of Law, p. 1321, and authorities cited. (5) The trial court did not err in refusing to permit plaintiff to testify as a witness in this cause. Her right to recover depended on the non-validity of the antenuptial contract made with deceased, and the fraudulent and testamentary disposal of the notes. He was a party to the contract—was dead. She could not testify in regard thereto. 2 Revised Statutes, 1889, sec. 8918, p. 2056. Nor could she testify in reference to the terms or provisions of any business transaction she had with her husband; nor to any admission or conversations of her husband, whether made to herself or third parties. 2 Revised Statutes, 1889, sec. 8922, p. 2059. (6) Fraud must be proved—not guessed or conjectured. Facts which give rise only to suspicion of its existence do not establish it. *Priest v. Way,* 87 Mo. 16; *Oertel*

*v. Hogan*, 7 Mo. App. 591. (7) Before a disposition of personal property made by the husband in his lifetime is avoided as in fraud of dower rights of the wife the disposition should be shown to be testamentary in its character, and should be clearly shown to have been made for the purpose of defrauding her of her dower. *Crecelius v. Horst*, 89 Mo. 356-9. (8) A gift made by a married man *bona fide* during coverture and accompanied by delivery is sufficient to take the property beyond the reach of his widow after his death, although it was made for the purpose of preventing her from acquiring an interest therein after his death. *Williams v. Williams*, 40 Fed. Rep. (Kan.) 521.

ELLISON, J.—The law in cases of the nature of the one under discussion is well settled, and the only difficulty we have encountered has been in regard to the application of the facts as developed in the evidence. The law is that, notwithstanding the wife has, by force of the statute, dower in the personal property of the husband, such property must have been the husband's at his death. He has an absolute and unrestricted right to dispose of it at any time during his lifetime by gift or otherwise, provided such disposition is not testamentary in character and made with a view of defeating the wife's claim therein after the husband's death. *Crecelius v. Horst*, 89 Mo. 356. It must be testamentary in character, by which I understand it must be intended to have its operative effect after the death of the donor. As if, for instance, it should be given to the donee by deed or other instrument with the use thereof reserved to the donor during his life. Or, if it should be given in view of impending death, the gift must *also* be made with a purpose of depriving the wife of her dower. For the circumstances surrounding, and, perhaps, controlling, a gift in view of impending

dissolution, may show no effort or disposition to defraud the wife. Whether merely showing a gift *causa mortis*, without more, would make a case of fraud against the wife's dower right, need not be decided in this case.

As to the facts of the case before us: Conceding that, when the deceased handed the pocket book containing the notes in controversy to Dawson (while in good health several months prior to his death), Dawson handed them back and refused to accept them, as contended by counsel for the widow, the act on the part of the deceased, nevertheless, at least goes to show that deceased was not looking upon his gift as in its nature testamentary. So on another occasion in the fall prior to his death while in good health, deceased, just before starting to Kansas, handed to defendant Brandon the key to his desk containing the pocket book and notes, saying, "There is a package in my desk for you and William."

But this concession need not be made; the gift was complete when deceased handed the pocket book and notes to Dawson, the notes indorsed and the pocket book wrapped in a paper on which was written, "For W. H. Dawson and J. N. Brandon." It is evident from the whole testimony that, when defendant Dawson stated, "But I gave it back to him and told him that I would get it at some other time; I did not accept it at that time," he did not mean that he at that time refused or rejected the gift; but merely that he would not take the package away at that time. The circumstances, when considered in the light of the other testimony, show a gift completed by delivery at that time, and a return of the package for keeping until some other time.

We have not overlooked the fact that there is evidence in the cause tending to sustain plaintiff's theory

that the object of the gift was to defraud plaintiff of her dower. But it is not of such persuasive character as to justify us in overturning the finding of the chancellor, and we would not do so but for the following further consideration.

II. The widow was offered as a witness in her own behalf, objection was made and sustained on the ground, as stated in the objection, of a marriage contract between her and her deceased husband, which purported to be an agreement between the parties, whereby each agreed to have and make no claim against the property of the one who should die first. This contract is void, so far as it may be sought by it to deprive plaintiff of her dower interest (*Mouser v. Mouser*, 87 Mo. 437; *Farris v. Coleman*, 103 Mo. 352), there being no provision for the wife for her life after the death of the husband. The objection to the testimony, therefore, as made was not sound. But, if for any other reason, plaintiff was wholly disqualified as a witness, we would uphold the action of the trial court. We are of the opinion she is not so disqualified. She is not disqualified under section 8918, Revised Statutes, 1889, on the ground of the adverse party being dead, for the reason that, though she is seeking property which belonged to the deceased husband, he cannot be regarded as an adverse party. The property belongs to the distributees of the estate as the law may direct. The contending parties are alive. The points decided in *Hoyt v. Davis*, 30 Mo. App. 309, and *Spradling v. Conway*, 51 Mo. 51, are applicable to the question here discussed.

She is, however, partially disqualified under section 8922. She should not be permitted under this section to testify to any admissions or conversation of her husband, or to any conversation of another with her husband, or any act done by the other in connection with such conversation, which might be explained by it.

*Holman v. Bachus*, 73 Mo. 49; *Waddle v. Mc Williams*,
21 Mo. App. 298. But, as before stated, she has been
excluded here as incompetent for any purpose, and for
this we will reverse the judgment. For we cannot say,
of course, but that she may give testimony which may
properly come from her, which would turn the scale
with the trial court in considering the facts.

The judgment is, therefore, reversed, and the cause
remanded. All concur.