Nellie Bonebright QUINT, Respondent,

v.

Victor H. QUINT et al., Appellants.

No. 23421.

Kansas City Court of Appeals.

Missouri.

June 4, 1962.

P. M. Marr, Milan, Edward R. Jayne, Kirksville, for appellants.

L. F. Cottey, Lancaster, Clare Magee, Unionville, for respondent.

SPERRY, Commissioner.

Plaintiff, Nellie Bonebright Quint, widow of Walter H. Quint, deceased, instituted this suit whereby she sought a decree in equity adjudging void *ab initio* an antenuptial contract entered into between her and her deceased husband. Defendants are the lineal descendants of deceased and are the executor of his will and the sole beneficiaries under it, except for a small bequest to plaintiff. A decree was entered for plaintiff, adjudging the antenuptial contract to be void as of the date of its execution and that it did not then, and does not now, bar any rights that plaintiff might have or assert as a widow, as against the estate of deceased, as provided for by the statutes of Missouri. Defendants have appealed.

The essential facts necessary to our decision are not in dispute.

Plaintiff and deceased were first married and divorced sometime prior to October 14, 1952. Both had been previously married and each had children by such previous marriages. Prior to the legal dissolution of that marriage they entered into a property settlement whereby deceased deeded to plaintiff certain real estate and she, in consideration thereof, released all of her interest in his real estate and personal property.

On October 14, 1952, the parties again were married but, in contemplation of that marriage and before it was solemnized, they entered into an antenuptial contract. Therein it was agreed that plaintiff, upon the death of Mr. Quint, should have as her absolute property the household goods then in his home, *if not disposed of prior to* that time. It was further agreed that, upon the death of either, the other would not make any claim upon his or her estate; that each should continue to own, manage, mortgage or sell whatever real estate and personal property they might have as of the date of and during the marriage relationship, free from any claim on the part of the other; and that the marriage should not affect their respective property rights, or those of their respective children, after the death of either.

They lived together as husband and wife until April 12, 1960, when Mr. Quint died. He left a will which was duly admitted to probate. By its terms deceased's descendants received all of his property except the household goods, appraised and of the value of $577.00, which plaintiff received. At the time of his death he owned a farm, appraised and of the value of $25,000.00, and other personal property of the value of $5,357.00. His debts, including expenses of last illness and funeral, totalled $1828.61.

Plaintiff's chief contention here is that the antenuptial contract was and is void because of the provisions of Section 469.160, RSMo 1949, V.A.M.S. c. 475 Appendix, which was in effect on the date the contract was made and the marriage was consummated. That statute provided as follows:

"469.160. Marriage contract, when a bar to dower.—If any *woman* prior to and in contemplation of marriage, shall, in agreement or marriage contract with her intended husband, or other person, receive any estate, either real or personal, *to take effect after the death of her husband,* by way of *jointure,* as a provision for her support during life, and expressed to be in full discharge of all her claim of dower, such estate shall be valid, and a bar to dower in the estate of her husband. * * *" (Italics ours).

That section appears in previous revisions of our statutes in its present form, as

follows: Sec. 5, p. 333, R.S.1825; Sec. 17, p. 521, G.S.1865; Sec. 2201, 1879; Sec. 4529, 1889; Sec. 2950, 1899; Sec. 362, 1909; Sec. 330, 1919; Sec. 334, 1929; Sec. 334, 1939. Jointures were first permitted as substitutes for dower in England by 27 Henry VIII. King v. King, 184 Mo. 99, 82 S.W. 101, 103. When the above section came into our law, all personalty owned by a woman vested absolutely, as a gift, in her husband; and women were otherwise economically handicapped. Logan v. Phillips, 18 Mo. 22, 28; Roberts v. Walker, 82 Mo. 200, 208. But it continued in the same form for many decades after the law in respect of women's property rights, and their economic condition, had changed. It became an anachronism in the law but it could not be removed except by legislative action. It was repealed and replaced by section 247, Laws 1955, p. 385, now Sec. 474.120 RSMo 1959, V.A.M.S., which should be considered together with Sec. 474.220, RSMo 1959, V.A.M.S.

■ Comparing the new section with the former, it is clear that substantial and material changes have been made. Whether or not such changes are sufficient in view of modern social conditions is a legislative matter, not a judicial one. However, we are not here concerned with the statutory law as it now appears, because the statute as it appeared in 1952 is the law that governs the contract then made. 17 C.J.S. Contracts § 22, p. 355; Logan v. Phillips, supra, 18 Mo. 28; Roberts v. Walker, supra, 82 Mo. 208.

In Broyles v. Magee, Mo.App., 71 S.W.2d (St. Louis) 149, 152 in speaking of an antenuptial contract, it was said:

> "It has been held that such an agreement, to be effective as a bar to a widow's dower, must possess the attributes designated in the section of the statute which we have set out above. (The section here considered) Reger v. Reger, 316 Mo. 1310, 293 S.W. 414."

■ By reference to the italicized portion of the quoted statute, it will be seen that the *woman*, in a valid antenuptial contract, must receive an estate either real or personal, to take effect *after* the death of her husband, *by way of jointure*, as a provision for her support during life, and expressed to be in full discharge of all her claim of dower. In Moran v. Stewart, 173 Mo. 207, 73 S.W. (Mo.) 177, 179, it was said: "Jointure is defined by Sir Edward Coke to be 'a competent livelihood of freehold for the wife of lands or tenements, etc., to take effect presently or in possession or profit after the decease of her husband for the life of the wife at least.' Coke on Litt. L. 1. c. 5, §§ 41, 36 b.

■ Measured by that definition, the contract herein fails. By it *no* estate, real or personal, was conveyed to the wife. True, she was to receive some household goods upon the husband's death, *if not previously disposed of*. Whether or not personalty of such small value would have been reasonably adequate is not material. By the contract, she was only to receive that property conditionally. Such a provision was not in compliance with the terms of the statute. It was held, in the last above mentioned case, that a provision whereby the wife should have the use and benefit of 106 acres of land for her life, *or as long as she remained a widow*, was insufficient.

In Mowser v. Mowser, 87 Mo. 437, 440–441, the court said: "It is against public policy to allow a man, by an agreement before marriage, which does not secure to the wife a provision for her support *during life after his death*, to bar her right to dower. The statutes sanction no such agreement." (Italics ours). In Young v. Sangster, 322 Mo. 802, 16 S.W.2d 92, 95, it was said: "It may be conceded that the contract, as written, was not sufficient to bar his wife's claim of dower in his estate, because, under the contract, she received no estate from him to take effect after his death, * * *." In Brandon v. Dawson, 51 Mo.App. 237, 244, it was held that an agreement between parties in contemplation of marriage *whereby each agreed to make no claim against* the

property of the one who should die first, is void as to the *wife*, there being no provision for her after the death of the husband. In Coulter v. Lyda, 102 Mo.App. 401, 76 S.W. (Kansas City) 720, 722, it was held that an antenuptial contract which conveys to a woman nothing that she did not already have, (such as the one here considered) will not bar her statutory rights. See also King v. King, supra.

However, defendants contend that even if the antenuptial contract here did not measure up to the requirements of section 474.120, V.A.M.S., so as to bar the marital rights of plaintiff, still since the parties had acted under it and treated it as valid and plaintiff had, during the lifetime of deceased, dealt with her property as she saw fit, had required deceased to execute instruments in accordance with the contract, and had availed herself of and accepted all of the benefits of the contract, she is now estopped to claim that it is invalid; that she may not retain the benefits of the contract *and the benefits which would have been available to her without the contract.*

In support of this contention defendants cite two cases. In Davis v. Cook, 337 Mo. 33, 85 S.W.2d 17, the court considered an antenuptial contract similar to the one here involved. It was held that the contract was not binding on the deceased wife but that since *she* had, during her lifetime, complied with its terms to the benefit of the surviving *husband, he* was estopped to claim benefits under the statute as against the provisions of the antenuptial contract.

The court rested its decision in that case (85 S.W.2d 1. c. 20) on Young v. Sangster, 322 Mo. 802, 16 S.W.2d 92, cited by defendants. The court held, in that case (16 S.W.2d 1. c. 95), that the antenuptial contract there involved was not binding on the wife "because, under the contract, she received no estate from him to take effect after his death, · * * *. But such a contract may become valid and binding upon the parties thereto, for all intents and purposes, by reason of their subsequent acts in

connection therewith, * * *." In that case both parties dealt with their property independently of the other throughout the marriage. It was held that plaintiff, the surviving husband, was estopped from claiming that the contract was not binding upon him; that the fact that it was not binding on his wife when made is not material on the issue of estoppel as against the *surviving husband.*

The above authorities are all that are cited by defendants on principle which they urge, namely, that a wife may be barred from claiming the benefits of an antenuptial contract not otherwise valid, merely because she exercised the privilege of dealing with her separate property during the marriage, owned by her prior to the marriage, as though she were a single woman. Note that, in both cases, the rule was applied as against the *surviving husband.* Defendants have cited no case where the principle has been applied to the surviving wife, and plaintiff says she has found no such case.

In Broyles v. Magee, (Mo.App.) 71 S.W. 2d 149, it was held that an antenuptial agreement which did not possess the attributes of the statute previously mentioned, cannot bar the widow's rights under the statute, and that the widow, having performed all of the terms of the agreement, was entitled to claim the benefits of the contract *and* those provided for widows under the statutes.

■ In Mowser v. Mowser, supra, it was held that it is *against public policy* to allow a man, by an agreement not in conformity with the statute, to bar a widow's right to dower. We think, from the statute and decisions, that the statute here involved had, as its purpose, the safeguarding of the rights of *women* contemplating marriage, not those of men.

In Coulter v. Lyda, 102 Mo.App. 401, 408, 76 S.W. 720, the chief question involved was whether a contract, similar to the one here involved would bar a widow's right to certain allowances provided by statute. The

court held that her rights were not thus barred.

In King v. King, supra, the court held that the contract there involved failed to bar a widow's rights under the statutes because it failed to expressly provide that the provisions therein made for her were made in lieu of dower, but also because it gave her nothing that she did not already have although, under its terms, the husband gave up his property rights in her estate owned prior to the marriage.

In 31 C.J.S. Estoppel § 110 a, p. 350, it is said that, as a general rule, by accepting benefits a person may be estopped from questioning the existence, validity, and effect of a contract. However, it is further said (p. 352) that an important exception to this rule is that where the contract is void as against public policy or against an express mandate of the law, a person who has accepted a benefit thereunder will not be estopped to defend against the contract when it is sought to be enforced against him. That principle of law is forcefully asserted in Miller v. Bowen Coal Mining Company, (Mo.App.) 40 S.W.2d 485, 490. In Donovan v. Kansas City, 352 Mo. 430, 175 S.W.2d 874, 881, the court said: "Equitable estoppel is impotent to purge transactions of the fatal infirmity of being in violation of law." In harmony therewith, and as a clarification of that rule, it is stated in 30 C.J.S. Equity § 89, p. 458: "The general principles of equity will not be applied to frustrate the purpose of the laws or to thwart public policy. Equity will not permit that to be done by indirection which, because of public policy, cannot be done directly."

The contract relied on by defendants has been said by the courts of Missouri to be void as against public policy. It was made in direct violation of the public policy of the state as declared by statute. To hold that plaintiff is estopped to deny its invalidity would be to permit by indirection that to be done which could not be done directly. That neither of the parties herein, nor this court has found a case in Missouri which holds as defendants contend the law to be, is some evidence that there is no such case. Lacking any positive authority to that effect, we will not flout well established precepts of the law as stated herein.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.