ESTATE OF Russel DUGGER, Deceased, Gary Dugger, Brenda Dugger, Randy Dugger and Dan Nelson, Trustee for Jerry Dugger, Appellants,

v.

Dorothy DUGGER, Marsha Dalton, Evelyn Camby, Cheryl McLatchy and John Miller, as Personal Representative of the Estate of Russel Dugger, Respondents.

No. 25235.

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 2003.

Scott B. Stinson, Mountain Grove, for appellants.

Paul D. Link, Husch & Eppenberger, LLC, Springfield, for respondents.

ROBERT S. BARNEY, Judge.

Central to this appeal are issues involving: (a) the validity of a Beneficiary Deed executed by Russel Dugger, deceased, and his wife, Respondent Dorothy Dugger; and (b) whether, by executing certain purported "estate planning" documents together with the Beneficiary Deed, Russel and Dorothy entered into a valid postnuptial agreement, pursuant to section 474.120, RSMo 1994, by which Dorothy waived her spousal rights of inheritance to a farm owned by Russel.[1]

---

1. We use first names for reasons of clarity and convenience. We mean no disrespect to the parties. We note that Appellant Dan Nelson is trustee for Jerry Dugger, and Respondent John Miller is the Personal Representative of the Estate of Russel Dugger, deceased.

Appellants are children of Russel. At the time of his death on October 7, 2000, Russel was also survived by his wife, Dorothy. Russel and Dorothy had no children in common, but Russel had four children from his first of three marriages, and Dorothy had three children from a former marriage. Dorothy's children are also named Respondents in this action. Dorothy has since remarried.

Prior to their marriage, Russel was seised of 214 acres of land ("the farm") standing in his sole name, and Dorothy was seised of 40 acres of land, which she sold during the course of the marriage. She testified at trial that the proceeds of the sale were deposited into joint accounts with her husband, Russel.

The record reveals that on September 13, 1999, Russel and Dorothy met with a local attorney and discussed creating an estate plan. Russel was then ill with cancer. Exhibits introduced at trial show that Russel and Dorothy jointly executed the following documents on September 17, 1999:(1) Beneficiary Deed; (2) Beneficiary Assignment; and (3) identical Last Wills and Testaments (the "Wills").[2] Only the Beneficiary Deed sought to make disposition regarding the farm. As best we discern, neither Will referenced the Beneficiary Deed or made disposition relative to the farm. The Beneficiary Assignment explicitly set out that it applied only to personal property.

The Beneficiary Deed is the primary document at issue in this suit. It set out, in pertinent part, the following:

### BENEFICIARY DEED

THIS DEED, made this 17th day of September, 1999, wherein Grantors Russel Dugger and Dorothy Dugger, husband and wife, of the County of Wright, State of Missouri, without consideration do by these presents GRANT AND ASSIGN, CONVEY AND CONFIRM unto GRANTEE BENEFICIARIES named as follows: [Respondent children of Russel], the following described Real Estate, situated in the County of Wright, State of Missouri, to-wit:

[Legal description of 214 acres of real estate]

Grantor, Dorothy Dugger, hereby reserves the right of use, occupancy, and benefit of the house and yard so long as she may live.

TO HAVE AND TO HOLD the same together with all rights and appurtenances to the same belonging unto the said Grantee Beneficiaries, their heirs and assigns forever.

THIS BENEFICARY DEED is executed pursuant to the Nonprobate Transfers Law of Missouri, Chapter 461, RSMo. (1989). It is not effective to convey title to the above described real estate until Grantor's death or the death of the last to die of two or more Grantors. This deed is subject to revocation and change in the manner provided by law.

IN WITNESS WHEREOF, Grantors execute this beneficiary deed on the day and year first above written.

[Signatures of Russel Dugger and Dorothy Dugger]

[Acknowledgement and notarial entries]

Shortly after Russel's death it was discovered that the Beneficiary Deed had not been recorded and was still in the possession of the attorney who had prepared the instrument. The record shows that the

---

**2.** The attorney's secretary testified at trial that Russel and Dorothy also signed two Durable Powers of Attorney and Two Durable Power of Attorneys for Healthcare. These instruments were not entered into evidence at trial.

recording fee had been collected at the attorney's office. The attorney's secretary testified, however, that on the Monday morning following the signing of the Beneficiary Deed, she received a phone call from a man who identified himself as Russel Dugger and that he told her, "I was in there last week and signed a deed. Tell [the attorney] not to record that deed until I get back with him." The attorney's secretary also testified that she was not certain that the voice she heard was that of Russel and that she had no further contacts concerning the deed until after Russel's death, when she eventually turned the deed over to Dorothy.

Subsequently, Appellants filed their second amended petition in four counts seeking: (I) a declaration that the Beneficiary Deed was valid between the parties; alternatively monetary damages; (II) a declaration that Dorothy had executed a valid waiver of her inheritance rights to the real estate "pursuant to § 474.120 RSMo"; (III) a judicial construction of Russel's Will; and (IV) a reformation of the Beneficiary Deed.

The trial court entered judgment in favor of Respondents on Counts I and II and in favor of Appellants on Counts III and IV. The trial court further ordered, adjudged and decreed, in pertinent part, that Russel "died intestate with respect to the 214 acre farm;" and that Dorothy was "entitled to one-half of the intestate estate that is the 214 acre farm as the surviving spouse pursuant to § 474.010 RSMo." This appeal followed.

In their sole Point Relied On, Appellants premise their appeal on the trial court's denial of their second count, based on Appellants' contention that the collective effect of Dorothy and Russel having signed a Beneficiary Deed, a Beneficiary Assignment, and mutual Wills constituted a postnuptial contract pursuant to section 474.120, by which Dorothy waived and renounced her inheritance rights to the farm. They also argue that in either event, the Beneficiary Deed alone constituted a written contract, under the terms of which Dorothy had waived her inheritance rights by agreeing that Russel's farm would not pass through probate and that his children would receive the farm at his death.[3]

We review both arguments together because the issues are intertwined. Central to our discussion is the Beneficiary Deed executed by Russel and Dorothy on September 17, 1999.

The trial court's rulings as to Counts I, III, and IV are not disputed in this appeal. The trial court ruled, and all parties concede, that the beneficiary deed in question was not effective to pass title[4] at Russel's death because it was not recorded, as re-

---

3. We observe that Appellants raised a second point of error in their reply brief grounded on their contention that Respondents are now "estopped from denying that [Dorothy] executed a valid waiver." While estoppel, together with specific performance, were briefly alluded to in the argument attendant to their first point, these topics were never expressly mentioned in Appellants' First Point Relied On. "An appellate court is obliged to determine only those questions stated in the points relied on[;] .... [i]ssues raised only in the argument portion of the brief are not preserved for review." *Boatmen's Bank v. Foster*, 878 S.W.2d 506, 509 n. 4 (Mo.App.1994); see *In re Marriage of Flud*, 926 S.W.2d 201, 206 (Mo.App.1996).

Furthermore, "[a]ssignments of error set forth for the first time in an appellant's reply brief do not present issues for appellate review." *Cain v. Buehner and Buehner*, 839 S.W.2d 695, 697 n. 2 (Mo.App.1992). "The sole purpose of a reply brief is to rebut arguments by respondents in their briefs, not to raise new points on appeal." *Id.*

4. It is undisputed that Russel was the sole owner of the farm in question at the time he executed the beneficiary deed.

quired by section 461.025.1, RSMo Cum. Supp.1999.[5]

"On review, we determine whether the judgment is supported by substantial evidence and is not against the weight of the evidence, and whether the court erroneously declared or applied the law." *Estate of Tegeler,* 688 S.W.2d 794, 796 (Mo.App.1985); *see also Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976); *Lehr v. Collier,* 909 S.W.2d 717, 719 (Mo.App. 1995). "[W]e view the evidence and the concomitant inferences in a manner favorable to the prevailing party while disregarding all contradictory evidence." *Wood v. Wood,* 2 S.W.3d 134, 138 (Mo.App.1999).

We observe that "[t]he overarching principle in operation in construing the General Assembly's statutes is that the legislature's intent must prevail, and that intent is discerned from the plain and ordinary meaning of the statute's language." *Groh v. Ballard,* 965 S.W.2d 872, 873 (Mo. App.1998). The plain and ordinary language of section 461.025.1, RSMo Cum. Supp.1999 is clear:

A deed that conveys an interest in real property to a grantee designated by the owner, that expressly states that the deed is not to take effect until the death

of the owner, transfers the interest provided to the designated grantee beneficiary, effective on death of the owner, if the deed is executed and filed of record with the recorder of deeds in the city or county or countries in which the real property is situated prior to the death of the owner.

"The requirement that the [beneficiary] deed be recorded before death is the formality that takes the place of the delivery requirement." JACKSON AND EICKHOFF, JR., II Mo. TRUSTS, POWERS OF ATTORNEY, CUSTODIANSHIPS, AND NONPROBATE MATTERS § 13.37(MoBar 1998, 2001).[6]

"The General Assembly created beneficiary deeds in § 461.025 ... and governs their use in Chapter 461 of its revised statutes." *Groh,* 965 S.W.2d at 873. "It has mandated in § 461.062.1, RSMo [Cum.Supp.1999] that: 'The rights and obligations of the owner, beneficiary and transferring entity [in nonprobate transfers] shall be governed by the nonprobate law of Missouri.'" *Id.* (second alteration in original). As with other deeds, to be recorded the beneficiary deed must conform to the provisions of sections 442.130, RSMo 1994 and 59.330, RSMo 1994. Pursuant to "461.033.6, RSMo 1994,

---

**5.** The statutory language of section 461.025, RSMo Cum.Supp.1999 provides that:

1. A deed that conveys an interest in real property to a grantee designated by the owner, that expressly states that the deed is not to take effect until the death of the owner, transfers the interest provided to the designated grantee beneficiary, effective on death of the owner, *if the deed is executed and filed of record with the recorder of deeds* in the city or county or counties in which the real property is situated prior to the death of the owner. A beneficiary deed need not be supported by consideration or be delivered to the grantee beneficiary. A beneficiary deed may be used to transfer an interest in real property to a trust estate, regardless of such trust's revocability.

2. This section does not preclude other methods of conveyancing that are permitted by law and that have the effect of postponing enjoyment of an interest in real property until the death of the owner. This section does not invalidate any deed, otherwise effective by law to convey title to the interest and estates therein provided, that is not recorded until after the death of the owner. (emphasis added).

**6.** Of course, a conventional deed that has been executed and delivered is still good, although not recorded until after the grantor's death. *Turner v. Mallernee,* 640 S.W.2d 517, 521 (Mo.App.1982).

any transfer of the property during the owner's lifetime terminates the beneficiary's interest in the property." *Id.* at 873 n. 1. Indeed, section 461.031.1, RSMo 1994 provides that: "Prior to the death of the owner, a beneficiary shall have no rights in the property by reason of the beneficiary designation and the signature or agreement of the beneficiary shall not be required for any transaction respecting the property."

The questions for our determination are: (1) did the unrecorded Beneficiary Deed that Dorothy signed, which in fact and law was a nullity, constitute a written postnuptial contract that waived her spousal rights of inheritance as to the farm? (2) Did the execution by Dorothy and Russel of the Beneficiary Deed, separate but similar Wills, and joint beneficiary assignments at the same time constitute a postnuptial agreement pursuant to section 474.120 by which Dorothy renounced her inheritance rights to the farm? We answer both questions in the negative.

Section 474.120, RSMo 1994 sets out that:

The rights of inheritance or any other statutory rights of a surviving spouse of a decedent who dies intestate shall be deemed to have been waived if prior to, or after, the marriage such intended spouse or spouse by a written contract did agree to waive such rights, after full disclosure of the nature and extent thereof, including the nature and extent of all property interests of the parties, and if the thing or promise given to the waiving party is a fair consideration under all circumstances.

 This Court has said that "[c]ontracts between competent spouses which are in effect mutual waivers of the estate of the other, are governed by statute." *Estate of Murphy*, 661 S.W.2d 657, 658 (Mo.App.1983). "As its language reflects,

§ 474.120 applies to both antenuptial and postnuptial agreements but is limited to situations of intestacy." *Hosmer v. Hosmer*, 611 S.W.2d 32, 35 (Mo.App.1980). "Its counterpart with respect to testate decedents is § 474.220, which also embraces antenuptial and postnuptial agreements." *Id.* In short, then, "under the [probate] code the law as to the validity of ante-nuptial and post-nuptial contracts is the same in both testate and intestate estates." *In re Adelman's Estate*, 377 S.W.2d 549, 553 (Mo.App.1964). "Decisions under either section are helpful in construing the other as both embody similar principles developed by case law." *Estate of Murphy*, 661 S.W.2d at 658–59.

 The rules governing the validity of both antenuptial and postnuptial agreements "*are unique and quite distinct from the requirements for the execution of a simple contract.*" *Estate of Youngblood v. Youngblood*, 457 S.W.2d 750, 754 (Mo. banc 1970) (emphasis added); *see also Hosmer*, 611 S.W.2d at 35. As with other contracts, "[t]o be valid, all the essential terms of a contract must be sufficiently definite to enable the court to give them an exact meaning." *McGilley v. McGilley*, 951 S.W.2d 632, 637 (Mo.App.1997). In particular,

[f]or a waiver of the rights of inheritance or any other statutory rights of a surviving spouse of an intestate decedent, compliance with § 474.120 requires: (a) a written contract to waive such rights; (b) prior full disclosure of the nature and extent of the rights, including the nature and extent of all property interests of the parties; (c) the giving to the waiving party of a thing or promise which is a fair consideration under all the circumstances.

*Hosmer*, 611 S.W.2d at 35. "[T]he ultimate inquiry in cases of this kind is wheth-

er the surviving spouse against whom enforcement of the agreement is sought has been defrauded or overreached." *Estate of Youngblood*, 457 S.W.2d at 756.

In our analysis, we observe that "[i]n return for the abolition of dower the widow has been given the rights by descent provided in section 474.010 and the exemptions, allowances and homestead rights provided by sections 474.250–474.300, inclusive." *Reinheimer v. Rhedans*, 327 S.W.2d 823, 828 (Mo.1959); *see also* § 474.110, RSMo 1994.

 It is our view that the Beneficiary Deed under review simply did not meet the requirements of a written contract which constitutes a spousal waiver of rights of inheritance or other statutory rights of a surviving spouse as in an antenuptial or postnuptial contract. Appellants cite to no relevant authority specifically addressing this issue.

In our perusal of the Beneficiary Deed in question, we note that despite the fact that Dorothy was not the owner of the farm, she joined as a "grantor" in the instant Beneficiary Deed. As she was not the owner of the property, there is little doubt that Dorothy joined in the conveyance to relinquish her marital rights as to the real property described in the instrument. *See* § 474.150, RSMo 1994.[7] However, according to the express and plain language of the instrument, Dorothy "reserved" and/or was granted a life estate in the house and yard of the farm.

 But the Beneficiary Deed was ineffective either to reserve or convey any title to the farm to anyone, because it was not recorded. Accordingly, Dorothy was unable to realize the benefit of her bargain in exchange for relinquishing her rights of inheritance. "The statutory requirement that there be a fair consideration under all the circumstances 'not only requires that there be such consideration as would support a simple contract, but further that the consideration moving to the spouse ... surrendering marital rights be fair and equitable in the particular circumstances.'" *Hosmer*, 611 S.W.2d at 35 (quoting *Estate of Youngblood*, 457 S.W.2d at 755).

 This Court cannot, under the guise of equity, convey to Dorothy a life estate in the house and yard mentioned in the defunct Beneficiary Deed. The General Assembly has made it clear that before a beneficiary deed has any legal validity, it must be recorded. § 461.025.1, RSMo Cum.Supp.1999. " 'The general principles of equity will not be applied to frustrate the purpose of the laws or to thwart public policy. Equity will not permit that to be done by indirection which, because of public policy, cannot be done directly.' " *Quint v. Quint*, 359 S.W.2d 29, 33 (quoting 30 C.J.S., *Equity*, § 89, p. 458). Furthermore, with regard to a beneficiary deed, "[t]he legislature made no provision in Chapter 461 for reformation." *Groh*, 965 S.W.2d at 874.

Citing *Lehr* as support, Appellants argue that when Dorothy and Russel signed similar Wills, a joint Beneficiary Assignment, and a Beneficiary Deed at the same time, the collective effect of the estate planning documents constituted a "written contract" as a matter of law. While *Lehr* correctly observed in dicta that when "the trust and will form parts of the same plan,

---

7. In particular, § 474.150.2, RSMo 1994, sets out that:

> Any conveyance of real estate made by a married person at any time without the joinder or other written express assent of his spouse, made at any time, duly acknowledged, is deemed to be in fraud of the marital rights of his spouse, if the spouse becomes a surviving spouse, unless the contrary is shown.

the documents must be construed together", *Lehr* is distinguishable on its facts. *Lehr,* 909 S.W.2d at 723.

*Lehr* did not pertain to beneficiary deeds or other nonprobate transfer instruments. It did not involve the interpretation of section 474.120 or waiver of spousal rights of inheritance pursuant to a postnuptial agreement of the spouses. *Lehr* chiefly pertained to whether an "unreformed trust instrument" was ambiguous and whether the trial court erred in reforming such a trust document.

Here, it is unquestioned that the Beneficiary Deed was invalid. The Beneficiary Deed made no reference to any other instrument signed by the spouses on the same day. Neither the Beneficiary Assignment nor the separate Wills expressly mention the Beneficiary Deed or set out that the parties were executing the Beneficiary Assignment and/or wills for the purpose of *either* spouse waiving his or her right of inheritance as to the property of the other. Indeed, as best we discern, the Wills executed by the parties pertained only to the disposition of certain personal properties of the parties. No mention of the farm is made in either will.

 While similar, the Wills were not made irrevocable; thus, the Wills were revocable at the whim of the maker. "The execution of a joint will or mutual wills does not create a presumption of a contract not to revoke the will or wills." § 474.155(3), RSMo 1994. "It is not sufficient merely to show that the wills were made pursuant to some agreement." *McComb v. Lyons,* 487 S.W.2d 16, 18 (Mo. 1972). For this Court to rule that the Wills executed by the parties were not ambulatory, but were made pursuant to contract between Dorothy and Russel, we must have full and satisfactory proof of an agreement to execute mutual, irrevocable wills. *Id.*

There must be a definite agreement, fair and just and certain in its terms and subject matter, to dispose of the property as in the wills provided; there must be a specific agreement that neither party will revoke his will—that they shall remain in force until the death of both testators; the agreement must be based upon a sufficient consideration, and the existence of such a contract must be shown by clear, cogent and convincing evidence.

*Id.*

Based on the record developed in this case, we cannot say that an agreement existed between Dorothy and Russel to make mutual, irrevocable wills as part of a written, postnuptial plan for the disposition of the parties' properties and for Dorothy's waiver of her rights of inheritance, pursuant to section 474.120, RSMo 1994.

Additionally, as previously set out, any transfer of the property during the owner's lifetime terminates the beneficiary's interest in the property. *See Groh,* 965 S.W.2d at 873 n. 1; § 461.031.1, RSMo 1994. Here, the beneficiary assignment jointly signed by the parties was *expressly* made "subject to revocation and change in the manner provided by law."

Accordingly, the requirement of definiteness and finality that is inherent in any contract militates against the sheer flexibility of nonprobate transfers under Chapter 461, such as a beneficiary deed and a beneficiary assignment that gives a grantor the right to convey to other parties the property described in the instrument. *See McGilley,* 951 S.W.2d at 637.

Lastly, mention must be made of the disposition of the parties' bank accounts and CDs, many of which were jointly titled by Russel and Dorothy. Russel also owned an IRA and an annuity, and Dorothy was the named beneficiary of these

latter assets. The record does not reveal when any of these accounts came into being. We do note that the spouses had been married 19 years, and there is nothing in the record that suggests the jointly titled funds were anything but marital properties. Indeed, Dorothy testified that she sold her 40-acre farm during the marriage and the funds derived from the sale were placed into joint accounts with her husband, Russel. There is no relevant evidence in the record suggesting that these accounts came into being for the express purpose of creating a written postnuptial agreement by which Dorothy waived her rights of inheritance.[8]

In conclusion, the record does not support the proposition that the collective effect of all documents signed by the spouses on September 17, 1999, was tantamount to a lawful and written, postnuptial agreement—particularly one that satisfied the requirement of section 474.120, RSMo 1994. Furthermore, viewing all of the instruments collectively we do not discern that "the consideration moving to the spouse ... surrendering marital rights, [i.e., Dorothy, was] fair and equitable in the particular circumstances." *Hosmer*, 611 S.W.2d at 35. The invalidity of the Beneficiary Deed obviously prevented Dorothy from enjoying a life estate as set out in the Beneficiary Deed. Point denied.

The judgment is affirmed.

MONTGOMERY, P.J., and GARRISON, J.

8. The following exchanges occurred during the trial:

[Counsel]: As a result of meeting with [the attorney] in September of 1999, was the beneficiary designation or how these accounts were titled, was any of that changed as a result of a meeting with [the attorney].
[Dorothy]: No.
[Counsel]: Was there any agreement to change the beneficiary designation in exchange for you signing any documents?
[Dorothy]: No.
* * *
[Counsel]: These accounts would have gone to you when Russel died regardless of what happened at [the attorney's] office, correct?
[Dorothy]: Yes.
* * *
[Counsel]: And nothing about these accounts was changed as a result of anything that took place at [the attorney]'s office?
[Dorothy]: No.